IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :         CASE NO. 06-04675
                                                :
EDGAR ABNER REYES COLON                         :         CHAPTER 11
                                                :
          Involuntary Debtor                    :
_____            :

OPINION AND ORDER

This case is before the court upon the motion for summary judgment to dismiss the involuntary petition filed by Dr. Edgar Abner Reyes Colón (hereinafter referred to as "Involuntary Debtor" or "Dr. Reyes") alleging that Banco Popular de Puerto Rico (hereinafter referred to as "Banco Popular" or "BPPR") and its affiliate Popular Auto, Inc. (hereinafter referred to as "Popular Auto") failed to comply with the requirements of 11 U.S.C. §303(b); namely: (i) the Involuntary Debtor at the time the involuntary petition was filed (November 22, 2006) had more than twelve (12) creditors; (ii) was financially solvent; and (iii) was paying his *bona fide* debts as they became due pursuant to the expert witness report of Rafael Rosario, C.P.A., C.V.A. Thus, an order of relief under 11 U.S.C. §303(h) may not be entered by the Court even if the proper number of petitioning creditors filed this involuntary petition ( Exhibit I, Docket No. 331). The Involuntary Debtor also alleges the following: (i) that Banco Popular's debt is the subject of a *bona fide* dispute as to the amount of the debt and thus, should not be considered in determining whether a debtor is generally paying his debts as they become due; and ( ii) that Banco Popular and Popular Auto have improperly used the provisions of the Bankruptcy Code as "an improper collection, intimidation and coercion tool, since the bank had a parallel pending case at the state court to protect and exercise its rights, and its affiliate had similar state court remedies available" (Docket No. 331, pg. 10). The Involuntary Debtor filed a supplemental motion to dismiss the case on several alternate grounds which are the following: (i) the untimely filing of "special circumstances" allegations by Banco Popular through Fed. R. Bankr. P. 9023 which incorporate Fed. R. Civ. P. 59(e); (ii) the Involuntary Debtor's opposition to Banco Popular's Fed. R. Civ. P. 59(e) motion (Docket No. 37) is pending the entry of a ruling on the merits by this court, since the issue was not addressed by the Bankruptcy Appellate Panel upon remanding the appeal for

the processing of notices to creditors by Banco Popular; (iii) Banco Popular expressly represented to the court that it would not be before this court if the Involuntary Debtor had offered a $2,000,000 settlement offer, and there is evidence, an e-mail from Banco Popular's previous attorney Sergio Ramírez de Arellano, which demonstrates that the Involuntary Debtor made such an offer to Banco Popular (Docket No. 352, Exhibit 2); (iv) Banco Popular's obstinate conduct in refusing to comply with applicable discovery disclosure rules and the Order entered by this court on March 29, 2011, since it refuses to produce all of the loan documents which it was specifically ordered to produce by this court; and (v) Banco Popular's obstinate conduct in pursuing the non-issue as to the number of creditors at the time it filed the involuntary petition (Docket No. 352).

Banco Popular filed its response to the Involuntary Debtor's supplemental motion to dismiss case on several alternate grounds by which it argues the following: (i) the Involuntary Debtor has failed to cite legal authorities in support of his "alternate grounds" for dismissal and has also failed to justify as a matter of law, the reasons why these "alternate grounds" justify the drastic sanction of dismissal of the involuntary petition in violation of P.R. LBR 9013-1(b) and 9013-2(a); (ii) this court has already decided on multiple occasions that Banco Popular can discover evidence pursuant to the "special circumstances exception" (Docket Nos. 77, 79, 156, 234, 240 & 241); (iii) on March 16, 2009, the parties filed a joint discovery plan and the Involuntary Debtor agreed to perform discovery on both the number of creditors and the "special circumstances" issue (Docket No. 80), thus the Involuntary Debtor is precluded from rearguing that Banco Popular waived the "special circumstances exception;" (iv) discovery disputes cannot be raised without a meet and confer certification under P.R. LBR 7037-1(b); (v) the Involuntary Debtor's inclusion of a privileged e-mail from Banco Popular's former counsel to evince that he offered $2,000,000 to Banco Popular is inadmissible because it is in the Spanish language and a settlement communication under Fed. R. Evid. 408 is inadmissable; and (vi) Banco Popular's alleged failure to comply with discovery and produce the "loan documents" is moot because the Involuntary Debtor's former counsel had inspected and obtained copies and the Involuntary Debtor's new counsel also inspected the original files and obtained copies of the documents (Docket No. 368). The Involuntary Debtor subsequently filed his omnibus response and opposition to Dockets Nos. 360, 364, 366, 368 & 370 which includes his opposition to Banco

Popular's response to the Involuntary Debtor's supplemental motion to dismiss (Docket No. 380).

Banco Popular filed its opposition to the motion to vacate Order and for entry of finding (Docket No. 345) and partial opposition to motion for summary judgment alleging that: (i) the Involuntary Debtor at the time of the petition had less than twelve qualified creditors pursuant to 11 U.S.C. §303(b)(1) and (2) and certain creditors such as secured creditors, creditors with contingent claims, creditors with claims that have been disputed, claims of insiders and claims of recipients of voidable transfers under 11 U.S.C. §544 *et seq.* must be excluded; (ii) "...of the twenty-two creditors alleged by Dr. Reyes, twenty-one must be excluded from the count in Section 303(b)(2) for one or more reasons set out in Section 303(b); and (iii) the Involuntary Debtor bears the burden of proving that he has more than twelve qualified creditors and he has failed to establish that he has 12 qualified creditors in this case (Docket No. 372). The Involuntary Debtor filed his response to Banco Popular's partial opposition to his motion for summary judgment based upon the following arguments: (i) a "claim" pursuant to 11 U.S.C. §101(5) "...includes secured, unsecured, disputed and contingent claims and, certainly, holders of disputed or contingent claims may participate in the case;" (ii) Section 101 of the Bankruptcy Code is used to determine the number of creditors as of the date of the filing of an involuntary petition; and (iii) "11 U.S.C. §303(b)(1) and (2) simply and unequivocally do not provide that claims of secured creditors, creditors with contingent claims, creditors with claims that have been disputed, must be excluded from the computation regarding the number of creditors. This is a blatant misrepresentation by Banco Popular and Popular Auto, as evidenced by the Bankruptcy Code's clear language" (Docket No. 388). Banco Popular filed its Sur-Reply to Involuntary Debtor's Omnibus Response and Opposition to Dockets Nos. 360, 364, 366, 368 & 370 (Docket No. 393). Banco Popular also filed its Sur-Reply to Involuntary Debtor's Response to Docket Nos. 372 & 374 (Docket No. 394).

For the reasons set forth below the Involuntary Debtor's motion for summary judgment is hereby granted in part and denied in part.

<u>Facts and Procedural Background</u>

The travel of this case has been long and winding since it has passed under the scrutiny of three (3) bankruptcy Judges, has been the subject of two appeals and both the Involuntary Debtor and

Banco Popular have had various attorneys represent them. The combination of all of these circumstances has in some way contributed to the unfortunate lethargic pace of this involuntary bankruptcy petition. Therefore, the procedural background of this case must be disclosed to better understand the reasons as to why five (5) years later the core issue before the court is whether the Involuntary Debtor has more or less than twelve (12) creditors. A factual determination that should have been concluded shortly after the involuntary petition was filed.

Banco Popular, as a petitioning creditor, filed an involuntary petition under Chapter 11 of the Bankruptcy Code against Dr. Edgar Abner Reyes Colón on November 22, 2006. Banco Popular indicated in the involuntary bankruptcy petition that it believed that the debts were primarily business debts. Banco Popular alleged the following in the involuntary bankruptcy petition against Dr. Reyes: (i) Petitioner is eligible to file this petition pursuant 11 U.S.C. §303(b); (ii) the debtor is a person against whom an order for relief may be entered under title 11 of the United States Code and (iii) the debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a *bona fide* dispute as to liability or amount. Banco Popular indicated in the bankruptcy petition that the nature of its claim was a business guarantee in the amount of $2,500,000. The Involuntary Debtor, on December 15, 2006, filed a motion to dismiss the involuntary petition based on the following arguments: (i) Dr. Reyes has more than twelve (12) holders of claims, thus Banco Popular fails to meet the requirements of 11 U.S.C. §303(b)(1) and the exception of 11 U.S.C. §303(b)(2) is inapposite in the instant case; (ii) the petition filed by Banco Popular "...falsely states that '[t]he debtor is generally not paying such debtor's debts as they become due, unless such debtors are the subject of a *bona fide* dispute as to liability or amount;'" (iii) Dr. Reyes under the totality of the circumstances test is paying his debts as they become due, and is current with his tax obligations, rent and utilities; (iv) and "Debtor has at least 20 holders of claims other than BPPR and contrary to BPPR's assertions he is paying said creditors under the regular terms and conditions of his obligations therewith, as the particular payments become due" (Docket No. 6). On December 18, 2006, the court [Carlo, Bankruptcy Judge] ordered the alleged Debtor to comply with Fed. R. Bankr. P. 1003(b) and file a list of all of his creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof, within ten (10) days (Docket No. 7). On December 26, 2006, Popular Auto filed

a motion to join the involuntary bankruptcy petition filed by Banco Popular on behalf of Dr. Reyes, since it is an unsecured creditor of Dr. Reyes in the amount of $164,204.95 in principal, $49,261.50 for legal fees and expenses and interest at the applicable legal rate until its full payment in accordance with the state court judgment notified on August 15, 2006 by the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Part, in the case Popular Auto v. Grupo Toraya Puerto Rico, Inc., et. als., case number KCD2005-1007 (Docket No. 9). On December 28, 2006, Dr. Reyes filed a motion in compliance with Order in which he listed fifty-eight (58) creditors (Docket No. 10, Exhibit I).

On December 28, 2006, Dr. Reyes filed a second motion to dismiss based on the following: (i) as it appears from the list submitted by the Involuntary Debtor he has more than twelve (12) creditors, "...something that was easily verifiable by BPPR, a well known banking institution;" and (ii) "[i]t has been held that a defective petition may be dismissed without allowing for an opportunity to correct the defect if the involuntary petition is filed in bad faith or the petitioning creditor, as BPPR, knew or should have known that the debtor had 12 or more creditors at the time of filing." (Docket No. 11). On December 28, 2006 the court [Carlo, Bankruptcy Judge] ordered that: "[b]ased on the alleged debtor's motion (docket #10) including a list of all creditors in compliance with Fed. R. Bankr. P. 1003(b), and it appearing that there are twelve or more creditors, the Court will afford a reasonable opportunity for other creditors to join in the petition. Wherefore it is ordered that all creditors included in the exhibit to docket #10 are granted fifteen (15) days to join in the petition. Notice of this order shall be given to the creditors by Banco Popular de Puerto Rico." (Docket No. 12).

On January 10, 2007, Banco Popular filed its Initial Response to Motion to Dismiss and Request for Extension of Time in it argues: (i) "[a]lthough it is expected that more creditors will join the involuntary petition due to alleged debtor's transfers of assets without due consideration during the last two years, Banco Popular singly filed the involuntary petition due to its receipt from alleged debtor of his certified financial statement as of July 31, 2005 declaring that he only had five (5) creditors. See Exhibit A. Accordingly, alleged debtor's financial condition and list of creditors is contested; and (ii) "...it is pertinent to this case that the alleged debtor list any other creditor for which

he serves as a guarantor, since such creditors may be willing to join the involuntary petition herein." (Docket No. 15). On January 17, 2007, the court [Carlo, Bankruptcy Judge] ordered the Involuntary Debtor to reply to Banco Popular's Initial Response to Motion to Dismiss and Request for Extension of Time (Docket No. 16).  On January 29, 2007, the Involuntary Debtor filed his Amended Reply to Initial Response to Motion to Dismiss and Request for Extension of Time in Compliance with Order by which he alleged that: (i) Banco Popular requested on January 27 and July 24, 2006 credit reports from Equifax which reveal that the Involuntary Debtor had and has more than three creditors (Exhibit A- Equifiax Credit Report as of December 14, 2006); (ii) the Involuntary Debtor's condensed and *pro forma* financial report referred to by BPPR does not contradict that the Involuntary Debtor had and has more than twelve (12) creditors holding claims against him that are not contingent as to liability or the subject of a *bona fide* dispute as to liability or amount (Docket No. 19). On March 15, 2007, Sergio Ramírez de Arellano, attorney for Banco Popular filed a Motion to Resign Legal Representation (Docket No. 25).

Subsequently, on March 27, 2007, the court, [Carlo, Bankruptcy Judge] filed a Decision and Order dismissing the involuntary petition based upon the following:

> "The Court concludes that the alleged debtor has more than twelve creditors and that he filed the list of creditors on December 28, 2006. The Court concludes that creditors were given a reasonable opportunity to join the petition in compliance with Fed. R. Bankr. P. 1003(b) and that Banco Popular has failed to join two other creditors in order to maintain this petition, as required by 11 U.S.C. §303(b)(1). Thus, the Court concludes that the involuntary petition must be dismissed. While the Court does not have evidence before it, from which it can conclude that the petition was filed in bad faith, pursuant to 11 U.S.C. §303(i)(B)[1], the Court will award the alleged debtor reasonable attorney's fees." (Docket No. 26, pg. 2).

On March 30, 2007, the Involuntary Debtor filed a Motion in Compliance with Order and to Reconsider submitting a breakdown of the attorney's fees and expenses incurred by Dr. Reyes' counsel in contesting this involuntary petition; and (ii) requesting the court to retain jurisdiction for the determination of actual and punitive damages caused to the alleged Involuntary Debtor due to the filing in bad faith by BPPR of the involuntary petition pursuant to 11 U.S.C. §303(i) (Docket No. 28).

---

[1]Reference should be to 11 U.S.C. §303(i)(1)(B) as indicated in the B.A.P. Opinion, Banco Popular de Puerto Rico v. Reyes Colon, (In re Colon), 2008 Bankr. Lexis 3960, at *5, fn. 3 (B.A.P. 1st Cir. 2008).

The court [Carlo, Bankruptcy Judge] on April 3, 2007 granted Dr. Reyes' request "...to have the Court retain jurisdiction to determine whether Banco Popular de Puerto Rico filed the involuntary petition in bad faith and if so, the alleged debtor's entitlement to any damages proximately caused by the filing and punitive damages." (Docket No. 29).

On April 9, 2007, Eldia Díaz Olmo filed a Notice of Appearance as co-counsel for Banco Popular (Docket No. 31). On April 9, 2007, Banco Popular filed a Motion for Reconsideration presenting the following arguments: (i) "special circumstances" (such as "fraud, artifice or scam") exist in this case, thus the order for relief may be entered without strict compliance with the requirements of 11 U.S.C. §303; namely the case where the involuntary debtor has more than twelve (12) creditors and less than three (3) petitioning creditors; (ii) the Involuntary Debtor is not generally paying his debts as they become due in conformity with 11 U.S.C. §303(h)(1); and (iii) BPPR is entitled to conduct discovery and a trial on the merits pursuant to Fed. R. Bankr. P. 1018 which specifically provides that Fed. R. Bankr. P. 7028-7037 apply. (Docket No. 32). On April 10, 2007, BPPR filed Supplementary Information Regarding Motion for Reconsideration with respect to additional information regarding the "preliminary relevant facts" of the Motion for Reconsideration (Docket No. 33).

On April 10, 2007, the court [Carlo, Bankruptcy Judge] ordered the alleged Debtor to reply in twenty (20) days to Banco Popular's motion for reconsideration of dismissal and supplemental information regarding motion for reconsideration (Docket No. 34). On April 13, 2007, BPPR filed a Motion Submitting Exhibits in support of its Supplementary Information Regarding Motion for Reconsideration (Docket No. 36). On April 30, 2007, the Involuntary Debtor filed his Answer to BPPR's Motion for Reconsideration arguing the following: (i) BPPR failed to serve and file the motion within the time prescribed by Fed. R. Civ. P. 59(e), given that the motion was filed thirteen (13) days later and Fed. R. Bankr. P. 9023, which governs motions to alter or amend judgments specifically provides that such motions be served within ten (10) days of the entry of judgment or order; (ii) BPPR's new argument regarding "special circumstances" as an exception to the requirements of Section 303 is an alternative argument which should have been raised prior to the entry of the Decision and Order, not under a Rule 59(e) motion to alter or amend judgment; (iii) the

7

"special circumstances" exception has not been recognized by the First Circuit; and (iv) the "special circumstances" exception is couched on evidence of fraud, artifice or scam, as to which there is not a scintilla of evidence in this case (Docket No. 37).

On April 30, 2007, the Involuntary Debtor filed a Motion Submitting Specific Allegations as to Bad Faith which consist of: (a) "[t]he filing of BPPR of the involuntary Chapter 11 petition was done after a relationship with Respondent dating back to at least October 29, 2002, as a result of which Respondent guaranteed BPPR's loans to Grupo Toraya Puerto Rico, Inc. and Perfetto Group Corp., in the principal amount of $2,364,053.38, and after extensive negotiations directed to the settlement of BPPR's claim against Respondent, as to which on March 5, 2005, BPPR filed a complaint for collection of money and execution of mortgages against Respondent and others in DKCD05-0166 (1008), pending before the Court of First Instance of Puerto Rico, Superior Section of Bayamón;" (b) in the state case a consent Order was entered on August 25, 2005 which provided that Dr. Reyes "...would not dispose of investments in brokerage houses, real or movable property, cash and personal effects, with which Order" Dr. Reyes has complied with; (c) BPPR unilaterally filed the Chapter 11 involuntary petition knowing that Dr. Reyes has more than twelve (12) creditors and that he was paying his debts as they became due, and falsely indicating the contrary in the petition; (d) the petition was filed by BPPR abusively and unfairly to gain leverage to its claim against Dr. Reyes and force a settlement under BPPR's terms; and (e) "BPPR's wrongful attempt to commence bankruptcy proceedings against Respondent constitutes bad faith, since the Chapter 11 involuntary petition was filed for a non-bankruptcy purpose to harass and intimidate Respondent, particularly considering the pendency of DKCD 05-0166, in which BPPR agreed to the consent order of August 25, 2005, and to the subsequent conditioned consent of January 19, 2006, for the sale by Respondent of his real property." (Docket No. 38).

On May 1, 2007, Banco Popular filed its Reply to Respondent's Answer to Banco Popular de Puerto Rico's Motion for Reconsideration arguing that: (i) the motion for reconsideration was timely filed under Fed. R. Bankr. P. 9006(a) given that April 6, 2007, was Good Friday, a legal holiday observed by the Court, thus that day was excluded from computation of the term and the motion was timely filed on Monday, April 9, 2007; (ii) BPPR has clearly established that a manifest error of law

was committed when the Court dismissed the case without affording BPPR the right to complete discovery and a trial on the merits as required by 11 U.S.C. §303(h) and the applicable Rules of Bankruptcy Procedure; (iii) Dr. Reyes' position is that "an alternative argument which should have been raised prior to the entry of the Order" is merit less because BPPR was never granted the opportunity to present its case, thus the motion for reconsideration is properly based upon the fact that a clear legal error was committed in dismissing the case without discovery, notice and trial (Docket No. 39).

On July 18, 2007, the court [Carlo, Bankruptcy Judge] rendered its Decision and Order with respect to BPPR's motion to alter or amend a judgment and denied the same concluding that: (i) Banco Popular's motion for reconsideration of the dismissal was filed on a timely basis; (ii) Banco Popular never alleged an exception to the three (3) petitioning creditors requirement during the three (3) months between the filing of the creditor list and the dismissal of the petition, thus Banco Popular failed to raise the argument on a timely basis; and (iii) the involuntary petition filed by Banco Popular was insufficient on its face (Docket No. 40). Banco Popular filed the Notice of Appeal on July 19, 2007 appealing the Decision and Order issued on July 18, 2007 at Docket No. 26 (Docket No. 41). On July 30, 2007, BPPR filed the Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented (Docket No. 43).

Subsequently on November 21, 2008, the United States Bankruptcy Appellate Panel (B.A.P.) for the First Circuit rendered its judgment reversing and remanding the March 27, 2007 Decision and Order (Docket No. 26) that dismissed the involuntary Chapter 11 petition filed by Banco Popular for entry of an order consistent with this Opinion (Docket No. 61). The First Circuit B.A.P. in its Opinion and Order made the following findings: (i) "[BPPR] delayed over three months in requesting discovery even though it was aware that the number of petitioning creditors required was at issue, and only then requested discovery, especially given the expedited nature of involuntary proceedings. Therefore, it was not an abuse of discretion to deny [BPPR] the opportunity to conduct discovery;" (ii) "[a]lthough [BPPR] is an unsympathetic appellant, particularly if it failed to serve the creditors as ordered so to do by the bankruptcy judge and now seeks to rely on lack of notice and a hearing as the grounds for its appeal, the rules governing dismissal are in place to protect all creditors and to give

9

them an opportunity to join the petition prior to its dismissal. The creditors should not be prejudiced by the failure of others to provide it the notice required for dismissal. Without a hearing, we find no basis for the bankruptcy judge's findings. We determine, therefore, that the court erred in dismissing the case without at least giving all creditors notice and the opportunity for a hearing;" (iii) as to the issue of whether the bankruptcy court erred in denying the motion for reconsideration, the B.A.P. concluded that, "[a]s this Panel has reversed the decision dismissing the case without notice to creditors and opportunity for a hearing, it is unnecessary to reach the issue of reconsideration;" and (iv) given that the B.A.P. determined that the bankruptcy court erred in dismissing the petition without notice and a hearing, the award for costs and attorney's fees was reversed (Docket No. 61). A copy of the First Circuit B.A.P. mandate was docketed on December 31, 2008 (Docket No. 63).

Subsequently, on January 8, 2009, BPPR filed an Informative Motion informing the court of various subpoenas for production of documents and depositions of certain persons; namely; (1) Edgar Reyes Colón; (2) Francisco Quintero Peña; (3) Eric Reyes Colón; and (4) Félix Román Dávila (Docket No. 62). The Involuntary Debtor, on January 13, 2009, filed a Motion to Quash Subpoena arguing that; (i) BPPR is not entitled to discovery in this case because the B.A.P. Judgment is "...premised exclusively on the failure to serve the creditors with Debtor's motion to dismiss BPPR's involuntary petition as ordered by this Court to provide them with the opportunity to join the same prior its dismissal;" (ii) "...this case was remanded to the Court for proceedings not inconsistent with the Judgment and thus is limited to providing the other creditors with the failed notice for them to have an opportunity to join BPPR's involuntary petition;" and (iii) BPPR failed to provide a reasonable time to Involuntary Debtor for the production of documents in conformity with Fed. R. Civ. P. 34 (Docket No. 64).

On January 15, 2009, the court [Carlo, Bankruptcy Judge] scheduled a hearing for March 13, 2009 to consider the alleged debtor's motion to dismiss at Docket No. 11 and ordered the alleged debtor to provide twenty (20) days notice of the referenced hearing to all creditors and parties in interest and file a certificate of service with the court by February 18, 2009 (Docket No. 65). On January 16, 2009, Banco Popular filed a Notice of Intent to Oppose "Motion to Quash Subpoena" Filed by Debtor (Docket No. 66). On January 23, 2009, BPPR filed its Opposition to "Motion to

10

Quash Subpoena" presenting the following arguments: (i) "...denying Banco Popular the right to discovery at this time would when Banco Popular has diligently and timely requested such right would constitute a clear and manifest error of law;" and (ii) "[a]s correctly pointed out by Debtor, since the creditors listed by him were never served with notice to join the petition, it is at such stage that the case must come again." (Docket No. 68).

On January 28, 2009, the Involuntary Debtor filed the Notice and Certificate of Service of his motion to dismiss and of the scheduled March 13, 2009 hearing to all creditors and parties in interest (Docket No. 69). On February 11, 2009, Banco Popular filed a motion requesting an extension of time until February 20, 2009 to reply to the Involuntary Debtor's motion to dismiss (Docket No. 72). On February 20, 2009, BPPR filed its Opposition to Motion to Dismiss and Request that Hearing Scheduled for March 13, 2009 be Converted to Status Conference and Requesting Other Remedies based on the following arguments: (i) BPPR adopts by reference the arguments made in its initial response to the Involuntary Debtor's motion to dismiss (Docket No. 15); (ii) BPPR is contesting the allegations made by Involuntary Debtor that he has more than twelve (12) creditors; (ii) the evidence on record (not limited to the Equifax credit report) evinces that as of the date of the filing of the involuntary petition, Dr. Reyes had no more than five (5) to seven (7) creditors; (iii) Dr. Reyes committed perjury when he submitted the list of alleged creditors, since Dr. Reyes had closed certain accounts prior to the filing of the bankruptcy petition; (iv) a substantial number of creditors included by the Involuntary Debtor in his list submitted under oath on December 28, 2006 (Docket No. 10) will have to be excluded for being considered "insiders" (such as his son) pursuant to 11 U.S.C. §303(b)(2); (v) certain alleged "personal loans" from his accountant and from Mr. F.J. Quintero will have to be excluded, since "...Banco Popular will show that these are the persons that have assisted debtor in carrying out the transfer of properties to Inmobiliaria Canarias and that now appear as incorporator or President, Secretary and Treasurer of said legal entity; and that these transactions can be avoided under 11 U.S.C. §544;" (vi) Involuntary Debtor also included in the list other alleged debts for "services" and for other assumed annual payments that were not owed as of the petition date, nor do they qualify as "creditors" as defined in 11 U.S.C. §101(10); and (vii) if the court concludes that the Debtor had more than twelve (12) creditors at the time the petition was filed, that "special

circumstances" exist for this court to grant the relief requested by Banco Popular, even if no other creditor joins the petition, thus the arguments made in Banco Popular's motion for reconsideration (Docket No. 32) are adopted by reference (Docket No. 73).

On February 24, 2009, the court [Carlo, Bankruptcy Judge] granted Banco Popular's request to convert hearing to a status conference and denied the Involuntary Debtor's motion to quash subpoena (Docket No. 64) and granted Banco Popular's opposition to motion to quash (Docket No. 74).

On March 4, 2009, the Involuntary Debtor filed a Motion to Alter or Amend Order based on the following: (i) the number of creditors Dr. Reyes had at the time of the bankruptcy petition is an adjudicated fact which cannot be relitigated at this juncture and which BPPR had more than ample opportunity to attempt to establish prior to the dismissal of the case; (ii) BPPR's theory of "special circumstances" cannot be considered by the court given its own decision of July 18, 2007, when it denied BPPR's motion to reconsider the order of dismissal (Docket Nos. 32, 33,36, & 40); and (iii) "[t]he ruling of the Court denying Dr. Reyes' motion to quash the subpoenas, granting BPPR's motion to quash and converting the hearing of March 13, 2009 into a status conference must be altered by vacating the same, since it is (1) based upon manifest errors of law or fact; and (2) to prevent manifest injustice." (Docket No. 76).

On March 10, 2009, the court [Carlo, Bankruptcy Judge] denied the Involuntary Debtor's motion to alter or amend judgment (Docket No. 76) and ordered that, "[t]he alleged debtor filed a motion to quash Banco Popular's subpoena seeking discovery. While the alleged debtor correctly states that the Bankruptcy Appellate Panel concluded that this Court did not abuse its discretion in denying Banco Popular's request for discovery prior to hearing on the alleged debtor's request for dismissal of the involuntary petition. This Court, in its discretion, is allowing Banco Popular the opportunity to expeditiously conduct discovery." (Docket No. 77).

*Discovery Disputes*

On March 13, 2009 a status hearing was held in which the court [Carlo, Bankruptcy Judge] ordered that the scope of discovery will not be limited to the issues dealing with the matter of creditors and ordered the parties to filed a joint plan of discovery (Docket No. 79). On March 16,

2009, the parties filed a joint Discovery Plan Pursuant to Fed. R. Civ. P. 26(f) and Request for Order by which the parties informed that they would conduct discovery on the following controversies; (1) the number of creditors that the Involuntary Debtor had on the date of the filing of the involuntary petition; and (2) whether "special circumstances" exist and the Court is able to enter an order for relief, even if the Involuntary Debtor at the date of the filing of the petition had more than twelve (12) creditors and no other creditor joins the petition (Docket No. 80). On March 20, 2009, Banco Popular filed an Informative Motion Regarding Discovery informing the court of the subpoenas it has issued and that the dates of the same were previously coordinated with the Involuntary Debtor's counsel (Docket No. 81). On March 25, 2009, Banco Popular filed a Second Informative Motion Regarding Discovery of certain subpoenas it has issued (Docket No. 82). On March 26, 2009, Banco Popular filed a Third Informative Motion Regarding Discovery of certain subpoenas it has issued (Docket No. 83). On March 26, 2009, Banco Popular filed a Notice of Taking of Deposition of Involuntary Debtor (Docket No. 84).

On April 14, 2009, the court [Carlo, Bankruptcy Judge] granted the joint discovery plan (Docket No. 80) but not the request for an Order for production of documents since the parties have to subpoena the documents (Docket No. 85). On April 13, 2009, Dr. Francisco Quintero, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., and Inmobiliaria Madrid CXA Corp., filed a Motion to Quash or Limit Scope of *Subpoena Duces Tecum* and *Testificandum* Served to Non-Parties alleging that the same were unduly burdensome or require the disclosure of privileged or confidential proprietary information (Docket No. 86). On April 20, 2009, Banco Popular filed a Motion for Contempt against Félix Román Dávila and Eric Y. Reyes Colón for Non-Compliance with Subpoena pursuant to Fed. R. Civ. P. 45(e) since they failed to appear to the document production as scheduled in their subpoenas which in turn hinders Banco Popular's ability to complete discovery pursuant to the discovery plan's time table (Docket No. 88). On April 23, 2009, BPPR filed a Motion for Brief Extension of Time to File Reply to Motion to Quash Subpoena (Docket No. 89). On April 29, 2009, Banco Popular filed its Opposition to Motion to Quash or Limit Scope of Subpoena Duces Tecum and Testificandum Served Upon Non-Parties to Proceedings (Docket No. 90). On May 22, 2009, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., Inmobiliaria Madrid CXA

Corp. and Francisco Quintero filed a Motion for Additional Extension of Time to Counter Reply Banco Popular's Opposition to Motion to Quash or Limit Scope of Subpoena Duces Tecum and Testificandum Served Upon Non-Parties to Proceedings (Docket No. 99).

On May 27, 2009, the Involuntary Debtor filed an Informative Motion informing that he has forwarded to BPPR an initial request for production of documents pursuant to Fed. R. Civ. P. 34 (Docket No. 98). On May 28, 2009, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., Inmobiliaria Madrid CXA Corp. and Francisco Quintero's motion for additional extension of time was granted (Docket No. 100). Subsequently, on June 1, 2009, Dr. Reyes filed a Motion to Quash Subpoena and for Protective Order as to Banco Popular's Subpoena *Duces Tecum* of Francisco Quintero, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., and Inmobiliaria Madrid CXA Corp.(Docket No. 102).

*Bankruptcy Judge Brian K. Tester- Discovery Continues in particular as to alleged creditor Mrs. Ruby Goss*

On June 3, 2009, the court filed a Notice to All Creditors and Parties in Interest informing the same that the case had been reassigned to Bankruptcy Judge Brian K. Tester (Docket No. 103). On June 10, 2009, Banco Popular filed a Motion for Brief Extension of Time to File Reply to Motion to Quash Subpoena (Docket No. 105). The court [Tester, Bankruptcy Judge] granted the same on June 15, 2009 (Docket No. 106). On June 15, 2009, Dr. Reyes filed a motion to stay discovery regarding Mrs. Ruby Goss, who was a creditor listed by the Involuntary Debtor (Docket No. 107). On June 15, 2009, Mrs. Ruby Goss filed a Motion to Quash and/or Objecting Subpoena for Production of Documents of Witness Who Was Already Deposed and/or Protective Order arguing that: (i) BPPR's second Subpoena must be quashed because it was improperly served pursuant to Fed. R. Civ. P. 45(b)(1); (ii) the income tax returns are confidential in nature and their production is only warranted for extraordinary or special circumstances which are not present in the instant case; (iii) the production of tax returns would only provide BPPR with duplicate information that was already requested by BPPR to Mrs. Goss; and (iv) a protective Order must be issued limiting the production to a certification by the Puerto Rico Treasury Department and under an agreement with BPPR that the tax information will not be disclosed or made public and used only for discovery purposes in the

instant case (Docket No. 108).

On June 16, 2009, the court [Tester, Bankruptcy Judge] scheduled a status conference for August 8, 2009 (Docket No. 109).  On June 19, 2009, BPPR filed a motion requesting extension of time to file its opposition to Docket Nos. 102, 107 & 108 (Docket No. 113).  BPPR's request for an extension of time was granted on June 19, 2009 (Docket No. 114). On June 23, 2009, the Involuntary Debtor filed a motion requesting an Order staying all discovery proceedings in this case (Docket No. 116). On June 25, 2009, the court [Tester, Bankruptcy Judge] ordered for all discovery proceedings to be stayed until further order of the court (Docket No. 117).  On July 1, 2009, Banco Popular filed a motion for continuance of the August 7, 2009 status conference (Docket No. 119). On July 3, 2009, BPPR filed a motion requesting a second extension of time to file its opposition to Docket Nos. 102, 107 & 108 (Docket No. 120).  On July 20, 2009, the court [Tester, Bankruptcy Judge] granted BPPR's request for a second extension of time (Docket No. 121). On July 20, 2009, the court [Tester, Bankruptcy Judge] ordered the status conference to be rescheduled to September 4, 2009 (Docket No. 122). On July 29, 2009, BPPR filed its Opposition to Motions Requesting to Quash of Ruby Goss' Subpoena and Debtor's Request to Stay Discovery arguing that; (i) the Involuntary Debtor lacks standing to quash the subpoenas of Mr. Quintero, Mrs. Goss and the corporate entities; (ii) On January 13, 2009, the Involuntary Debtor filed a Motion to Quash all of the subpoenas that were served upon Mr. Quintero and the corporate entities (Docket No. 64) and on February 24, 2009, this court entered an order (Docket No. 74) denying Debtor's motion to quash; (iii) the Involuntary Debtor's request to stay discovery is "...merely a third frivolous attempt to reconsider this Court's previous Order allowing BPPR to conduct precisely the discovery BPPR has been diligently trying to complete; (iv) the Involuntary Debtor's request is contrary to the discovery plan (Docket No. 80) that was agreed to by the parties whereby the parties agreed to conduct discovery regarding, (a) the number of creditors the Involuntary Debtor had at the date of the filing of the petition and (b) if special circumstances exist  in the event Debtor demonstrates that he had less than twelve (12) creditors at the time of the petition; (v) the Involuntary Debtor's request contravenes the discovery plan, given that the parties agreed that BPPR was entitled to the documents that had been requested by Dr. Quintero and CPA Félix Román Dávila and jointly requested and Order from this Court to that

15

effect; and (vi) Mrs. Goss' motion to quash is unwarranted because such production is not privileged and the same is indispensable to assess the credibility of both Mrs. Goss and Involuntary Debtor regarding whether she was a creditor at the time the petition was filed (Docket No. 125). On August 5, 2009, the Involuntary Debtor filed a motion requesting an extension of time to reply to BPPR's Opposition to Motions Requesting the Quash of Ruby Goss' Subpoena and Debtor's Request to Stay Discovery (Docket No. 128). The court [Tester, Bankruptcy Judge] on August 12, 2009 granted the Involuntary Debtor's request for an extension of time (Docket No. 130). On August 12, 2009, Mrs. Goss filed a Motion for Leave to File Reply and her Reply to BPPR's Opposition to Motion Requesting the Quash of Ruby Goss' Subpoena arguing that; (i) Mrs. Goss' personal income tax returns are protected from complete and liberal disclosure because they contain private information that is not relevant to the court's inquiry; namely whether the Involuntary Debtor has hidden assets to avoid payment of his debt to BPPR; and (ii) Mrs. Goss is not a party to this action which should be taken into consideration in weighing the burdens imposed by the discovery (Docket No. 131). On August 17, 2009, Dr. Reyes filed his Reply to Banco Popular's Opposition to Motions Requesting the Quash of Ruby Goss' Subpoena and Debtor's Request to Stay Discovery based upon the following: (i) Dr. Reyes has standing to request a protective Order as to the subpoena *duces tecum* served upon Dr. Quintero, both as an individual and as the president of Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., and Inmobiliaria Madrid CXA Corp. pursuant to Fed. R. Civ. P. 26(c)(1); (ii) the grounds for the request of the protective order are different from Dr. Reyes' first Motion to Quash Subpoenas; namely, the motion for protective order is based on "...the transparent tactics of Banco Popular to improperly use the involuntary process as a collection tool;" and (iii) Banco Popular's request that this court deny the motion to stay discovery is moot because on June 25, 2009, this court granted Dr. Reyes' motion to stay discovery (Docket No. 134). On August 17, 2009, the court granted the motion filed by Mrs. Goss requesting leave to file reply (Docket No. 135). On August 18, 2009, Mrs. Goss filed her Reply to BPPR's Opposition to Motion Requesting the Quash of Ruby Goss' Subpoena (Docket No. 136).

*Discovery Disputes Continue*

On August 25, 2009, Dr. Reyes filed an Emergency Motion for Order to Show Cause Why

the Involuntary Petition Should Not be Dismissed due to Banco Popular's Bad Faith Acts which Dr. Reyes alleges are comprised of the following: (i) BPPR's intention to use the involuntary bankruptcy process as a collection tool, since "[i]n late 2005, Dr. Reyes made offers to settle the alleged debt of all State Court defendants, which was approximately $2.3 million in principal. Unsatisfied with Dr. Reyes' offers, Banco Popular, through its counsel, Sergio Ramírez de Arellano ("Mr. Ramírez"), threatened to file the involuntary petition against Dr. Reyes if he didn't offer more money," (ii) Banco Popular failed to conduct a careful investigation of Dr. Reyes' eligibility for an involuntary bankruptcy petition, particularly since it was the only petitioning creditor and relied on a 2005 balance sheet provided by Dr. Reyes; (iii) Banco Popular's failure to provide notice to all creditors and an opportunity for a hearing; (iv) during Mrs. Goss' deposition she reveals that she had been served with the notice of the pending motion to dismiss by Mr. Ramírez on January 10, 2007 and she showed a copy of the notice and the envelope (the envelope was stamped January 10, 2007) she received the notice in; and (v) each one of these bad faith acts by Banco Popular are examples of Banco Popular use of the bankruptcy proceedings to obtain a disproportionate advantage to its position (Docket No. 140).

On August 31, 2009, the court [Tester, Bankruptcy Judge] scheduled a hearing for September 4, 2009 to consider the Involuntary Debtor's emergency motion (Docket No. 143). On September 3, 2009, Banco Popular filed its opposition to the Involuntary Debtor's emergency motion for order to show cause presenting the following arguments: (i) the "mandate rule" precludes considering Dr. Reyes' emergency motion, given that the B.A.P. reviewed Dr. Reyes' motion to dismiss (Docket Nos. 6 &11) and considered all bad faith arguments as well as BPPR's "special circumstances" defense (Docket Nos. 32 & 40); (ii) Dr. Reyes' new arguments in the emergency motion do not constitute bad faith because; (a) BPPR's new counsel could not attest on appeal whether BPPR's former counsel had in fact notified creditors in compliance with the December 28, 2006 Order (Docket No. 12) since the record lacked such evidence; (b) other third party witnesses such as Ezequiel Rubín and Félix Fontán, who are listed as creditors, testified that they had not received any court notification prior to their deposition; (iii) whether BPPR's former counsel notified creditors is irrelevant to the underlying issue decided by the B.A.P. because reversal by the B.A.P. was still warranted because of the court's

omission under Fed. R. Bankr. P. 1017 and 2002 to notify creditors and BPPR of its intent to dismiss the case; (iv) Judge Gerardo Carlo's decision that BPPR "made a timely request for discovery prior to hearing on the alleged debtor's request for dismissal of the involuntary petition" (Docket No. 77) should not be altered; (v) Dr. Reyes agreed to perform discovery on two (2) issues; namely (1) the number of creditors and (2) the special circumstances, thus he is judicially estopped from changing positions via an emergency motion to hamper BPPR's ability to finish discovery and proceed to the trial on the merits; and (vi) the summary dismissal for bad faith is unwarranted unless an evidentiary hearing is held once BPPR has had its opportunity to present evidence at trial (Docket No. 145).

On September 4, 2009, a hearing was held in which the court [Tester, Bankruptcy Judge] ordered as follows;

"[t]he motion to quash or limit scope of subpoena duces tecum filed by Dr. Francisco Quintero, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., and Inmobiliaria Madrid CXA Corp. (docket #86) is hereby denied. Parties are ordered to continue discovery. Based on the arguments made by the parties in open Court, parties are allowed until September 11, 2009 to propose a discovery plan and file a preliminary pretrial report; and until November 30, 2009 to conclude discovery. The parties to meet and file an amended discovery plan by September 11, 2009. Upon compliance, a hearing to be scheduled for December 2009. The Court warns the parties that if another discovery dispute arises in this case, sanctions will be levied against the uncooperative party. Respondent's attorney argued that BPPR should be found as movant in bad faith in regards to representations previously made to the Court. The Court hereby bifurcates this issue and orders the debtor to supplement, within ten (10) days, its motions under a 11 U.S.C. §9011 argument based on testimony and the transcript of today's hearing. BPPR is granted ten (10) days, thereafter, to file its reply. The Court will then decide only with respect to the alleged ethical violations by Eldia Diaz Olmo, Esq. and decide if the matter will be referred to the United States District Court. As requested by BPPR in open court, BPPR and Mrs. Ruby Goss are hereby ordered to meet and agree on the certification to be request[ed] to the Puerto Rico Treasury Department. The parties to file a motion and/or proposed order for the Court's consideration. Upon BPPR's motion for contempt against Félix Román Dávila and Eric Y. Reyes Colón of non-compliance with subpoena (docket #88), Félix Román and Eric Reyes are to show cause within ten (10) days as to why they should not be held in contempt for not complying with properly served subpoenas" (Docket No. 156).

On September 9, 2009, BPPR filed an Emergency Motion for Sanctions and to Compel Compliance with Order since Dr. Reyes has violated the Court's September 4, 2011 Order to prepare and file a discovery plan because he has decided to request a stay on discovery and leave to file an interlocutory appeal (Docket No. 151). On September 10, 2009, the Involuntary Debtor's local counsel, attorney Charles A. Cuprill filed a Motion for Leave to Withdraw as Counsel for Respondent (Docket No. 153). On September 14, 2009, the court [Tester, Bankruptcy Judge] granted the motion

18

for leave to withdraw as counsel for respondent and granted ten (10) days to Involuntary Debtor to announce new local counsel or the *pro hac vice* approvals will be revoked (Docket No. 154). Subsequently, on September 21, 2009, Dr. Reyes filed his Response and Opposition to Banco Popular's Emergency Motion for Sanctions and to Compel Compliance (Docket No. 159). On September 23, 2009, BPPR filed a Motion to Revoke Pro Hac Vice Admission of Attorneys Mase, Lare and Greiffenstein for alleged violations of the American College of Trial Lawyers Code of Pre-Trial and Trial Conduct, ethical violations and L. Cv. R. 83.1(f) (Docket No. 160). On September 23, 2009, Dr. Reyes filed a motion requesting an extension of time (30) days to retain new local counsel (Docket No. 161). On September 25, 2009, Banco Popular filed a Motion to Strike Docket No. 161, since it alleges that Dr. Reyes' *pro hac vice* counsel have violated L. Cv. R. 83.1(f) which requires them to be at all times associated with local counsel (Docket No. 162). On September 29, 2009 the court [Tester, Bankruptcy Judge] ordered that;

"[r]espondent's motion for extension of time (docket #161) is hereby denied. Respondent's approved Pro Hac Vice admissions are hereby revoked. The orders approving the local admission, Dkt. No. 94, 95 and 146, are therefore vacated and set aside. Parties are allowed until October 9, 2009 to propose a new discovery plan. Respondent shall cooperate regardless of whether he retains counsel. Parties are afforded until December 15, 2009 to conclude discovery. Respondent can announce new counsel at any time" (Docket No. 163).

Subsequently, on October 7, 2009, Banco Popular filed a Motion for Entry of Order for Relief under Chapter 11 be entered against Dr. Reyes pursuant to 11 U.S.C. §105 as sanction for failure to comply with this Court's orders regarding the discovery of this case (Docket No. 165). On October 8, 2009, Dr. Reyes, *pro se*, filed an Urgent Motion for Reconsideration of Order and for Stay of Proceedings for Twenty Days so that he may find new counsel to represent him and resume the discovery proceedings (Docket No. 166).

On October 10, 2009, Dr. Reyes filed a Notice of Appeal regarding the September 29, 2009 Order (Docket No. 163) whereby this Court revoked the Involuntary Debtor's approved *pro hac vice* admissions and the orders approving the local admissions were vacated and set aside (Docket No. 171). On November 13, 2009, Copy of Mandate Dismissing Appeal in part because Dr. Reyes failed to prosecute the appeal was docketed (Docket No. 183).

On October 14, 2009 the Court granted Dr. Reyes' urgent motion for extension of time and

19

stay of proceedings until new counsel is announced (Docket No. 167) The court [Tester, Bankruptcy Judge] afforded Dr. Reyes twenty (20) days to announce new counsel and ordered the discovery deadline to remain at December 15, 2009 (Docket No. 167). On October 21, 2009, the court [Tester, Bankruptcy Judge] denied the motion that was filed by Banco Popular (Docket No. 165) requesting entry of Order for relief under Chapter 11 (Docket No. 169). On October 28, 2009, Banco Popular filed a Motion to Dismiss Appeal because the same is moot given that the court granted Dr. Reyes' Urgent Motion for Reconsideration of Order and for Stay of Proceedings (Docket No. 174).

On November 3, 2009, the Involuntary Debtor's new counsel, attorney Celina Romany filed a Notice of Apperance (Docket No. 181). On November 4, 2009, Banco Popular filed a Second Motion for Entry of Order for Relief under Chapter 11 (Docket No. 180). On November 19, 2009, Banco Popular filed a Third Motion for Entry of Order for Relief under Chapter 11 for Failure to Comply with Orders of the Court since the Involuntary Debtor indicated through his attorney that he would not participate in the discovery meeting since he will file a motion contrary to the Court's Orders regarding the discovery proceedings.

On November 25, 2009, the court [Tester, Bankruptcy Judge] denied Banco Popular's Second Motion for Entry of Relief under Chapter 11 (Docket No. 184). On November 25, 2009, the Involuntary Debtor filed his Reply Motion for Entry of Order for Relief under Chapter 11 for Failure to Comply with Order of the Court; and Motion Seeking Partial Judgment as to Debtor's Initial Motion to Dismiss and Partial Protective Order Pending Resolution of the Same by which he argues that this court must enter a judgment as to the applicability and scope of the "special circumstances" doctrine that must precede any further proceedings in this case (Docket No. 188).

On December 4, 2009, the court [Tester, Bankruptcy Judge] entered an Opinion and Order granting Banco Popular's Motion for the Entry of the Order for Relief under Chapter 11 for failure to comply with Orders of the Court filed on November 19, 2009 (Docket No. 186). On that same date, the court [Tester, Bankruptcy Judge] entered the Order granting the Order for Relief under Chapter 11 of the Bankruptcy Code to be entered (Docket No. 187). On December 4, 2009, the court [Tester, Bankruptcy Judge] filed the Notice of Corrective Entry informing that the document filed at docket No. 188 does not comply with P.R. LBR 1002-1(a) and is thus stricken from the record

(Docket No. 189).

On December 9, 2009, the Involuntary Debtor filed a Notice of Appeal to District Court regarding the Order for relief under Chapter 11 granted by this Court (Docket Nos. 195 & 196). On December 10, 2009, the court [Tester, Bankruptcy Judge] entered an Order whereby it informs that it will consider Debtor's Motion Reaffirming Prior Request for Leave to File Documents Conventionally (Docket No. 192) as a motion for reconsideration and will vacate the Notice of Corrective Entry (Docket No. 189) and re-enter the Involuntary Debtor's Reply to the Motion for Entry of Order for Relief filed on 11/25/2009 (Docket No. 188) (Docket No. 193). On December 10, 2009, the court [Tester, Bankruptcy Judge] ordered as follows; "[w]e inadvertently entered an Opinion and Order and an Order (docket entries numbers 186 and 187), due to the fact that Debtor's Reply to the Motion for Entry of Order for Relief was filed conventionally and was not yet docketed when the Orders were entered. Wherefore, as the orders were improvidently entered, they are hereby vacated and set aside" (Docket No. 194). On the same date, the court [Tester, Bankruptcy Judge] ordered Banco Popular to reply to the Involuntary Debtor's opposition (Docket No. 188) within ten (10) days (Docket No. 197). On December 10, 2009, the Involuntary Debtor filed a Motion in Response to Orders (Docket Nos. 193 & 194) alleging that his motion under no circumstances should be considered a motion for reconsideration, given that this Court is not allowed to divest the United States District Court for the District of Puerto Rico of its jurisdiction over this appeal, and thus the Clerk of this Court must comply with Fed. R. Bankr. P. 8004 and 8007 (Docket No. 201). On December 15, 2009, the court [Tester, Bankruptcy Judge] noted the motion entered in Docket No. 201 and stated as follows; "However, counsel is cautioned to ensure the accuracy of her factual allegations and legal arguments in her motions, in accordance with Fed. R. Bankr. P. 9011(b) (Docket No. 202).

On December 17, 2009, Banco Popular filed its Reply to Respondent's Opposition to Motion for Entry of Order of Relief by which it argues that; (i) various courts within the First Circuit have applied the "special circumstances" doctrine; (ii) the Involuntary Debtor had acquiesced to performing discovery on the "special circumstances" issue; (iii) the Involuntary Debtor's reply is an admission of Dr. Reyes' violations to this Court's Order; and (iv) the reply unlawfully seeks an unripe advisory opinion on the "special circumstances" issue (Docket No. 203). On December 21, 2009, Banco

Popular filed a Motion to Dismiss Appeal arguing the same to be moot and in the alternative, that the appeal is defective because pursuant to Fed. R. Bankr. P. 8001(b) and 8003 the Involuntary Debtor had to file together with the Notice of Appeal a motion for leave to appeal and the statement of the issues to be presented as required by Fed. R. Bankr. P. 8006 (Docket No. 205). On December 22, 2009, the Involuntary Debtor filed its Reply to Motion to Dismiss Appeal (Docket No. 206). On December 22, 2009, the Involuntary Debtor filed a Motion Requesting Stay of Judgment Pending Appeal pursuant Fed. R. Bankr. P. 8005 (Docket No. 207). On December 22, 2009, the Involuntary Debtor also filed its Designation of the Items to be Included in the Record on Appeal and Statement of Issues to be Presented (Docket No. 208). On December 28, 2009, Banco Popular filed a Motion for Leave to File Reply to Respondent's Opposition to Motion to Dismiss Appeal and Tendering Reply (Docket No. 210). Subsequently, on December 28, 2009, Banco Popular filed a Motion to Hold in Abeyance Motion to Stay of Judgment Pending Appeal or for Extension of Time (Docket No. 211). On December 30, 2009, Dr. Reyes filed a Request to Strike Motion to Dismiss Appeal and Opposing Request for an Extension of Time to File Response for Stay of Judgment (Docket No. 212). On January 7, 2010, the Transmittal of Record on Appeal regarding the appeal of the Order for Relief under Chapter 11 of the Bankruptcy Code that was entered on December 4, 2009 (Docket No. 187) was docketed (Docket No. 213). On January 12, 2010, the Acknowledgment of Appeal by District Court was docketed (Docket No. 216).

On February 23, 2010, the District Court dismissed the appeal as moot, finding that the Bankruptcy Court properly exercised its authority pursuant to Fed. R. Civ. P. 60(a) to vacate the order for relief under Chapter 11. The District Court's Judgment was docketed on March 3, 2010 (Docket No. 217).

On March 3, 2010, the court [Tester, Bankruptcy Judge] scheduled a status conference was scheduled for March 19, 2010 (Docket No. 218). On March 12, 2010, Banco Popular filed a motion requesting continuance of the March 19, 2010 status conference and it also informed the Court that Dr. Reyes had filed a Notice of Appeal in the District Court on March 4, 2010 (Docket No. 220). On March 15, 2010, the Court granted Banco Popular's request for continuance and rescheduled the status conference for April 23, 2010 (Docket No. 221). On April 16, 2010, Judge Tester entered an

order disqualifying himself from this case (Docket No. 224). On April 21, 2010, a Notice was filed by the Court cancelling the April 23, 2010 status conference (Docket No. 226).

*Proceedings Before Bankruptcy Judge Enrique S. Lamoutte*

On April 27, 2010, the court filed a Notice informing all creditors and parties in interest that the case has been reassigned to Judge Enrique S. Lamoutte (Docket No. 228). On May 12, 2010, an Order and Notice was filed informing all parties and creditors that a status conference was scheduled for May 24, 2010 (Docket No. 232). On May 24, 2010, a status hearing was held in which the Court ordered the following; (1) "[p]arties granted sixty (60) days to conclude discovery only as to whether or not sufficient creditors have joined the petition and to whether the 'special circumstances' doctrine applies to the facts in this case; (2) This court finds that the bankruptcy court has not decided whether the special circumstances doctrine applies in this case, and consequently, no such order is on appeal; (3) Court further finds that a decision on whether or not the doctrine applies is fact intensive, and declines, at this juncture, to make such a determination; (4) transcript is requested" (Docket No. 234).

On July 2, 2010, the Involuntary Debtor filed a Motion Stipulating Facts and Requesting Protective Order in which he seeks; (i) a protective order because he alleges that the discovery regarding certain property transfers are irrelevant to the "special circumstances" doctrine and the issue is moot because title to these properties has reverted to Dr. Reyes; and (ii) discovery regarding certain contested claim holders is a moot issue because any claims by these parties will not be considered a claim for purposes of determining the number of creditors pursuant to 11 U.S.C. §303 (Docket No. 237). On July 6, 2010, Banco Popular filed its Response in Opposition to "Motion Stipulating Facts and Requesting Protective Order" and Cross Motion for Sanctions and Entry for Order for Relief by which Banco Popular argues that the Involuntary Debtor's request for a protective order is another attempt to avoid discovery and contravene this court's prior Order regarding the conclusion of discovery in sixty (60) days regarding the issue of the number of creditors and whether special circumstances exist in this case (Docket No. 238). On July 7, 2010, the Involuntary Debtor filed an Informative Motion Submitting Amended Motion Stipulating and Requesting Protective Order and his Amended Motion Stipulating Facts and Requesting Protective Order (Docket No. 240). On July 7, 2010, the court ordered that; "[t]he motion filed by Debtor (docket #237) is hereby denied after

23

considering the response by petitioning creditor Banco Popular PR (Dkt. #238) and the protracted travel of this involuntary petition, the court concludes that it is time for the involuntary debtor to meet the merits of the issues before the court. Discovery is critical to such a decision" (Docket No. 241). On July 14, 2010, the Involuntary Debtor's attorney filed an Informative Motion disclosing that she will be on vacation from July 20 to August 20, 2010 and thus, requests that no hearing be scheduled or order issued during this time (Docket No. 243).

On July 22, 2010, Banco Popular and the Involuntary Debtor jointly filed an amended discovery plan disclosing the scheduled depositions and also requesting an extension of thirty (30) days to extend the discovery deadline until September 30, 2010 (Docket No. 244). On July 23, 2010, the Court granted the joint motion filed by the Involuntary Debtor and Banco Popular requesting until September 30, 2010 to conclude discovery and scheduled a status conference on October 22, 2010 (Docket No. 245). On August 6, 2010, Banco Popular filed an Informative Motion whereby it disclosed to the Court that on July 30, 2010 it had notified the subpoenas attached to the motion and that all the dates that were selected for discovery were previously coordinated with the Involuntary Debtor's counsel (Docket No. 247).

On August 12, 2010, the Involuntary Debtor's attorney (Celina Romany) filed a Motion to Withdraw as Attorney of Record by which she requests leave to withdraw as attorney of record and requests the Court to allow the Involuntary Debtor additional time to find new legal representation (Docket No. 248). On August 13, 2010, the Court granted attorney Celina Romany's motion requesting to withdraw as attorney of the Involuntary Debtor (Docket No. 249). On September 2, 2010, Banco Popular filed a Motion for Miscellaneous Relief requesting that the Court order Dr. Reyes to announce new counsel within a court-imposed deadline and once Dr. Reyes' new counsel appears before the Court to allow the parties at least ten (10) days to file a new amended discovery plan (Docket No. 251). On September 9, 2010, the Court granted the motion filed by Banco Popular and ordered the Involuntary Debtor to reply to the same within fourteen (14) days (Docket No. 252). On September 15, 2010 the Court rescheduled the status conference to November 9, 2010 (Docket No. 258).

Subsequently, on September 22, 2010, attorney Fernando Van Derdys filed a Notice of

24

Appearance and Request for an Extension of Time to Coordinate Discovery Plan, Supplementary Disclosures and Case Scheduling by which it requested until October 13, 2010 for the parties to file the amended joint discovery plan, including supplemental disclosures and scheduling timetable for deposition dates, cutoff dates for dispositive motions and suggested dates for the expedited trial of the involuntary petition (Docket No. 262). On September 27, 2010, Banco Popular filed its Reply to Notice of Appearance and Request for Extension of Time by which it requests the Court to take notice of its disagreement with the extension of time requested by the Involuntary Debtor and that the parties have scheduled to meet on October 4, 2010 to prepare and file the amended discovery plan (Docket No. 263). On October 4, 2010, the Involuntary Debtor and Banco Popular filed a Joint Informative Motion disclosing that counsel for the parties have agreed to meet again on October 14, 2010 to complete the amended discovery plan and meet and confer regarding a discovery dispute regarding taking the depositions of Dr. Reyes, Richard Carrión and Sergio Ramírez de Arellano, Esq. (Docket No. 264).

On October 20, 2010, the Involuntary Debtor and Banco Popular filed a joint Second Amended Discovery Plan and for Extension to Complete Discovery informing the Court of the following: (i) the depositions the parties plan to conduct and the dates for the same; (ii) the designation of Rafael A. Rosario, CPA, ESQ., CVA, as Dr. Reyes' expert witness and that an expert report will be produced on or within sixty (60) days from the date of this motion; (iii) BPPR and Popular Auto reserved the right to object to the expert and/or depose him and announce its own expert; and (iv) requesting the court to extend the discovery deadline until September 30, 2011 (Docket No. 265). On November 1, 2010, the court granted the joint motion approving the second amended discovery plan and the extension to complete discovery until September 30, 2011 (Docket No. 266). On November 2, 2010, Banco Popular filed a motion for protective order under Fed. R. Civ. P. 26(c) regarding the depositions of Richard Carrión and Sergio Ramírez de Arellano, Esq., arguing that; (a) Richard Carrión's deposition is unwarranted especially when there are other high and mid level corporate officials with direct knowledge of the facts of this case who may testify regarding BPPR's policies and corporate governance; and (b) Dr. Reyes has failed to establish just cause to be able to comply with the extraordinary exceptional circumstance of taking the deposition of Sergio

Ramírez de Arellano, Esq. as counsel of BPPR (Docket No. 267).

On November 4, 2010, Dr. Reyes filed a Motion to Reschedule Status Hearing and to Convert to Argumentative Hearing on Pending Discovery Issues (Docket No. 271). On November 5, 2010, the Court filed an Order and Notice granting Dr. Reyes' motion requesting the rescheduling of hearing to November 23, 2010 (Docket No. 273). On November 5, 2010, Banco Popular filed a Motion to Compel Dr. Francisco Quintero to Select Deposition Dates Agreed by the Parties in their Second Amended Discovery Plan (Docket No. 274).

On November 8, 2010, Banco Popular filed a Motion for Entry of Order to Obtain Certificates from the Puerto Rico Treasury Department and Internal Revenue Service Regarding Alleged Creditor Mrs. Ruby Goss (Docket No. 277). On November 8, 2010, Popular Auto filed a Motion for Protective Order under Fed. R. Civ. P. 26(c) regarding the taking of depositions of Elí Sepúlveda and Carlos Rodríguez Umpierre (Docket No. 278). On November 15, 2010, this Court Ordered the United States Internal Revenue Service ("IRS") to produce a certification with only certain information regarding the income tax returns (1040-PR forms) for the years 2005 and 2006 of alleged creditor Mrs. Ruby Goss (Docket No. 285). On November 15, 2010, the court Ordered the Puerto Rico Treasury Department to produce a certification with only certain information regarding the income tax returns for the years 2005 and 2006 of alleged creditor Mrs. Ruby Goss (Docket No. 286). On November 16, 2010, the court granted the motion filed by Banco Popular requesting to disallow the taking of depositions of Richard Carrión and attorney Sergio Ramírez de Arellano (Docket No. 280). On November 16, 2010 the court also granted the motion filed by Banco Popular requesting to order Dr. Francisco Quintero through his attorney to indicate the specific date he is available to be deposed (Docket No. 281). On November 16, 2010, the court granted the motion filed by Popular Auto requesting to stay the depositions of Mr. Elí Sepúlveda and Mr. Carlos Rodríguez Umpierre (Docket No. 282). On November 17, 2010, Dr. Reyes filed a motion to alter or amend this Court's Orders dated November 16, 2010 (Docket Nos. 280, 282 & 283) in response to Banco Popular's motion for entry of protective order regarding the depositions of Richard Carrión and attorney Sergio Ramírez de Arellano and in response to Popular's Auto for protective order (Docket No. 284). On November 23, 2010, the Court denied the motion to alter or amend this Court's Orders (Docket No. 284) because

the Involuntary Debtor failed to show the need for deposition on limited issues before the Court (Docket No. 293). On November 29, 2010, Mrs. Ruby Goss filed a motion for reconsideration and/or to vacate this Court's Order regarding the certifications that the Puerto Rico Treasury Department and the IRS were ordered to produce with respect to Mrs. Goss income tax returns for the years 2005 and 2006 (Docket No. 295). On December 1, 2010, Banco Popular filed its response in opposition to Mrs. Ruby Goss' motion for reconsideration (Docket No. 296). On December 6, 2010, Dr. Reyes filed a motion to amend the Court's November 23, 2010 (Docket No. 293) Order by which it denied the Involuntary Debtor's motion for reconsideration (Docket No. 284) of certain orders staying deposition discovery (Docket No. 297). On December 6, 2010, Banco Popular filed a motion to vacate the Order against the IRS, because it has decided to withdraw the discovery regarding the certification by the IRS of certain income tax information of Mrs. Ruby Goss (Docket No. 298). On December 7, 2010, Mrs. Ruby Goss filed a Notice of Intent and Leave to File Reply to Banco Popular's Opposition in Response to Ruby Goss' Motion for Reconsideration (Docket No. 299). The court granted Mrs. Ruby Goss' Notice of Intent and Leave to File Reply by December 13, 2010 to Banco Popular's opposition (Docket No. 300). The Court on December 22, 2010 granted Banco Popular's motion requesting to vacate the Order against the IRS (Docket No. 312).

On December 14, 2010, Mrs. Ruby Goss filed her Reply to the Response in Opposition to Ruby Goss' Motion for Reconsideration (Docket No. 306). On December 15, 2010, this Court scheduled a hearing for February 2, 2011 to consider the following: (1) Motion for reconsideration and/or to vacate order filed by Ruby Goss (Docket No. 295); Opposition filed by Banco Popular (Docket No. 396); Reply to opposition filed by Ruby Goss (Docket No. 306); and (2) Motion to amend order regarding additional findings and conclusions filed by Involuntary Debtor (Docket No. 307). The court granted Ruby Goss' motion requesting leave to file reply on December 22, 2010 (Docket No. 311). On January 3, 2011, Mrs. Ruby Goss filed her Reply to Response in Opposition to Ruby Goss' Motion for Reconsideration (Docket No. 315).

On January 24, 2011, BPPR filed an Informative Motion and Request for Entry of Order Modifying Matters to be Considered at hearing disclosing that on January 11, 2011 the Puerto Rico Treasury Department provided BPPR with certified copies of Mrs. Ruby Goss and her husband's

27

income tax returns for the years 2005 and 2006, thus turning moot Mrs. Ruby Goss' motion for reconsideration of this Court's Order.  BPPR also requested that the February 15, 2011 hearing be modified to cancel the consideration of this particular controversy (Docket No. 316).  On February 8, 2011, Mrs. Ruby Goss filed her Opposition to BPPR's Informative Motion and Request for Entry of Order Modifying Matters to be Considered at Hearing and Requesting Urgent Protective Order due to the following: (i) BPPR obtained copies of Mrs. Goss complete income tax returns without receiving any authorization; (ii) order BPPR to issue a certification that no copies of Mrs. Goss income tax returns for the years 2005 and 2006 were reproduced; (iii) order BPPR to provide a complete listing of the purposes and/or persons and/or institutions to which it provided copies of Mrs. Goss income tax returns; (iv) issue an order warning BPPR that it may be held liable for any unwarranted circumstance that may arise from its unauthorized use of Mrs. Goss income tax returns; and (v) sanction BPPR for its conduct towards Mrs. Goss (Docket No. 321).

On February 14, 2011, BPPR filed its Second Motion to Compel Dr. Francisco Quintero to Select Deposition Date and to Produce Documents as per *Subpoena Duces Tecum* Served on August 3, 2010 (Docket No. 324). On February 15, 2011, a hearing was held in which the Court ordered upon agreement of the parties, for the hearing to be continued until March 29, 2011 (Docket No. 325). On February 17, 2011, Mrs. Ruby Goss filed an Urgent Motion requesting immediate provisional protective relief regarding her income tax returns for the years 2005 and 2006 until the March 29, 2011 hearing (Docket No. 326).  On February 23, 2011, BPPR filed a Notice of Intent to Oppose Urgent Motion Requesting Provisional Protective Relief filed by Ruby Goss (Docket No. 328). On February 28, 2011, the Court granted the BPPR's motion informing that it will file its opposition to Mrs. Goss' Urgent Motion requesting provisional protective relief (Docket No. 329).  On March 1, 2011, Banco Popular filed its Response in Opposition to Ruby Goss' Urgent Motion arguing that Mrs. Goss' urgent motion should be denied because; (i) the motion is based on the false premise that BPPR served the Order dated November 15, 2010 (Docket No. 286) upon the PR Treasury Department after the motion for reconsideration had been filed (Docket No. 295) and the hearing to consider the same had been scheduled (Docket No. 307); (ii) the November 15, 2010 Order had been served against the PR Treasury Department on November 18, 2010, eleven (11) days before Mrs. Goss filed the motion

for reconsideration (Docket No. 296, Exhibit II); (iii) the motion for reconsideration does not automatically stay the effects of the November 15, 2010 Order; (iv) Mrs. Goss' counsel failed to request a stay of the effect of the November 15, 2010 Order, thus BPPR is not responsible for the PR Treasury Department's decision to produce the income tax returns instead of the certification as requested by the November 15, 2010 Order; and (v) it was Mrs. Goss who failed to comply with Judge Tester's September 4, 2009 Order that instructed BPPR and Mrs. Goss to agree on a proposed Order for the PR Treasury Department (Docket No. 330).

On March 2, 2011, Dr. Reyes filed a motion for summary judgment requesting that the involuntary petition be dismissed because Banco Popular and Popular Auto allegedly failed to comply with the requirements of 11 U.S.C. §303(b); namely: (i) the Involuntary Debtor at the time the involuntary petition was filed (November 22, 2006) had more than twelve (12) creditors; (ii) was financially solvent; and (iii) was paying his *bona fide* debts as they came due pursuant to the expert witness report of Rafael Rosario, C.P.A., C.V.A., thus an order of relief under 11 U.S.C. §303(h) could not be entered by the Court even if the proper number of petitioning creditors filed this involuntary petition ( Exhibit I, Docket No. 331). The Involuntary Debtor also alleges the following: (i) that Banco Popular's debt is the subject of a *bona fide* dispute as to the amount of the debt and thus, should not be considered in determining whether a debtor is generally paying his debts as they become due; and ( ii) that Banco Popular and Popular Auto have improperly used the provisions of the Bankruptcy Code as "an improper collection, intimidation and coercion tool, since the bank had a parallel pending case at the state court to protect and exercise its rights, and its affiliate had similar state court remedies available" (Docket No. 331, pg. 10).

On March 14, 2011, Banco Popular filed a Motion to Exclude Expert Witness Rafael Rosario and Preliminary Response in Opposition to Dr. Edgar Reyes' Motion for Summary Judgment based on the following; (i) Rafael Rosario should be excluded as an expert witness because his report was filed seventy (70) days after the December 20, 2010 deadline; (ii) Dr. Reyes failed to disclose the areas that would be covered by this expert; and (iii) the automatic expert disclosures, pursuant to Fed. R. Civ. P. 26 apply under Fed. R. Bankr. P. 7026 (Docket No. 333).

On March 15, 2011, Mrs. Goss filed Leave to Reply and her Response in Opposition to Ruby

Goss' Urgent Motion presenting the following arguments; (i) the November 15, 2010 Order was for a certification from the PR Treasury Department and not for the copies of the actual income tax returns; (ii) BPPR has a legal duty to return Mrs. Goss her income tax returns; and (iii) any failure of the parties to meet and agree on the proposed language of the Order requesting certification does not alter the fact that the Order was for a certification and not for the complete income tax returns (Docket No. 334). On March 17, 2011, Popular Auto filed a Motion to Join Banco Popular's Motion in Docket No. 333 (Docket No. 335). On March 28, 2011, Dr. Reyes filed his Opposition to Banco Popular and Popular Auto's Motion to Strike Expert Witness Report and to Deny Motion for Summary Judgment based on the following reasons; (i) the delivery cutoff date (which has been established as September 30, 2011) is more than half a year away; (ii) the depositions have not been concluded; (iii) the dispositive motions deadline has not expired; (iv) no pre-trial hearing has been scheduled in this case; (v) no evidentiary hearing has been scheduled in this case; (vi) there has been no obstinate conduct by Dr. Reyes; and (vi) the proposed voluntary discovery timetable does not bar amendment to the expert witness report or amendments to the discovery timetable (Docket No. 336).

Subsequently, on March 29, 2011 a hearing was held in which the court ordered as follows: "(1) All contested issues re: Ms. Ruby Goss are stayed. Banco Popular de P.R. to turnover forthwith the tax returns delivered by Treasury. If determining that she is a creditor critical to the case, then matters will be reopened; (2) Docket #324 is granted; order to be entered; (3) Docket #333 is denied; order to be entered; (4) Debtor to submit list of creditors within 10 days, under penalty of perjury; (5) Banco Popular de P.R. shall put at debtor's (alleged) disposition loan documents within 10 days; (6) Parties to update discovery timetable (docket #265) within 10 days, to include answering the motion for summary judgment (docket #331) and length of trial; (7) Status conference will be held, as scheduled, on 04/29/11 at 10:30am; and (8) Transcript requested" (Docket No. 337). Also, at this hearing the court concluded that the following issues were pending: "(1) whether as of [11]/22/2006 there were 12 or more creditors; (2) whether special circumstances exist to allow the filing of the involuntary petition by less than 3 creditors; (3) if #1 and #2 are met, whether the involuntary debtor was as of [11]/22/06 paying his debts as they mature" (Docket No. 337). On March 31, 2011, the court granted Banco Popular's motion to compel Dr. Francisco Quintero to select a deposition date

and to produce documents per *subpoena duces tecum* (Docket No. 338). On March 31, 2011, the court denied Banco Popular's motion to exclude expert witness Rafael Rosario(Docket No. 339). On March 14, 2011, the Involuntary Debtor filed a Motion for 14-Day Extension of Time to File Responses to Matters Considered and Orders Entered at March 29, 2011 Hearing (Docket No. 344). On April 14, 2011, Dr. Reyes filed a Motion to Vacate Order and for Entry of Finding arguing that; (i) "[t]he record before this Honorable [Court] categorically allows a forthwith finding to the effect that Reyes Colón had more than twelve (12) creditors on the date Banco Popular filed the involuntary petition, to wit, November 11, 2006;" (ii) the Involuntary Debtor on December 28, 2006 (Docket No. 10), under penalty of perjury attested to the number of creditors he had at that time; and (iii) "[e]ven without counting the Puerto Rico Treasury Dept., it is more than evident that, since at least two (2) years ago, to wit, as of the year 2009, it is an undisputed fact that Reyes Colón had more than twelve (12) creditors when Banco Popular singlehandedly filed the involuntary petition in this case" (Docket No. 345).

On April 14, 2011, Banco Popular filed a Motion for Contempt of Court Against Dr. Francisco Quintero for Not Complying with the March 31, 2011 Order (Docket No. 346). On April 15, 2011, the Court granted the Involuntary Debtor's motion requesting a fourteen (14) day extension to reply to this Court's Order (Docket No. 348).

On April 26, 2011, the Involuntary Debtor filed a supplemental motion to dismiss the case on several alternate grounds; namely: (i) the untimely filing of "special circumstances" allegations by Banco Popular through Fed. R. Bankr. P. 9023 which incorporate Fed. R. Civ. P. 59(e); (ii) the Involuntary Debtor's opposition to Banco Popular's Fed. R. Civ. P. 59(e) motion (Docket No. 37) is pending the entry of a ruling on the merits by this court, since the issue was  not addressed by the Bankruptcy Appellate Panel upon remanding the appeal for the processing of notices to creditors by Banco Popular; (iii) Banco Popular expressly represented to the court that it would not be before this court if the Involuntary Debtor had offered a $2,000,000 settlement offer but there is evidence (an e-mail from Banco Popular's previous attorney Sergio Ramírez de Arellano) which demonstrates that the Involuntary Debtor made such an offer to Banco Popular (Docket No. 352, Exhibit 2); (iv) Banco Popular's obstinate conduct in refusing to comply with applicable discovery disclosure rules and the

31

Order entered by this court on March 29, 2011, since it refuses to produce all of the loan documents which it was specifically ordered to produce by this court; and (v) Banco Popular's obstinate conduct in pursuing the non-issue as to the number of creditors at the time it filed the involuntary petition (Docket No. 352). On April 28, 2011, Banco Popular filed a Motion for Extension of Time to Respond to Docket Nos. 345 and 352 on or before May 26, 2011 (Docket No. 354). On April 28, 2011, Dr. Franciso Quintero filed a Motion in Opposition to Contempt and Submitting Documents by Third Party Dr. Francisco Quintero (Docket No. 355).

Subsequently, a status hearing was held on April 29, 2011, in which the Court ordered as follows; "[m]ovant's application to withdraw without prejudice is hereby granted (#346) (See Dkt #355). BPPR: Issue [whether] the creditors listed by debtor can all be counted towards the number of 12. Involuntary Debtor: uncontested there are more than 12 creditors. Debtor: List of creditors is the one in Dkt #331. Petitioning creditors granted until May 26, 2011 to reply/oppose Dkts. #345, #352. Petitioning creditors granted until June 28, 2011 to reply/oppose Dkt. #331. Transcript requested" (Docket No. 356).

On May 10, 2011, Banco Popular filed an Informative Motion disclosing that it is working on its motion under Fed. R. Civ. P. 56 (d) and that it has notified to Dr. Reyes and certain third party witnesses of certain depositions (Docket No. 359). On May 17, 2011, Banco Popular filed its Motion for Relief under Federal Rule of Civil Procedure 56(d) whereby it seeks additional time to engage in critical discovery necessary to defeat the motion for summary judgment regarding its "special circumstances" claim which are based on Dr. Reyes' alleged fraudulent scheme (Docket No. 360). On May 19, 2011, the Involuntary Debtor filed a Motion to Quash Notice of Deposition Pending Adjudication of Rule 59(e) Dispositive Motion because the notice of taking of deposition served on Dr. Reyes on May 4, 2011, is contrary to Fed. R. Bankr. P. 7030(d)(1), made applicable by Fed. R. Bankr. P. 9014 (Docket No. 363). On May 19, 2011, Banco Popular filed its Response in Opposition to Involuntary Debtor's Motion to Quash and Stay Discovery requesting an Order to; (1) deny Dr. Reyes' motion to quash and stay discovery; and (2) compel Dr. Reyes' counsel to meet and confer with the undersigned as soon as practicable to agree on a specific date for the taking of deposition of Dr. Reyes, which is essential to discover facts to defeat his motion for summary judgment (Docket

No. 364). On May 19, 2011, the Involuntary Debtor filed his Preliminary Response in Opposition to Motion to Quash Notice of Deposition Pending Adjudication of Rule 59(e) Dispositive Motion (Docket No. 365). On May 19, 2011, Popular Auto filed a Motion to Join Banco Popular's Motions in Dockets 360 & 364 (Docket No. 366).

On May 25, 2011, Banco Popular filed its response to the Involuntary Debtor's supplemental motion to dismiss case on several alternate grounds by which it argues the following: (i) the Involuntary Debtor has failed to cite legal authorities in support of his "alternate grounds" for dismissal and has also failed to justify as a matter of law, the reasons why these "alternate grounds" justify the drastic sanction of dismissal of the involuntary petition in violation of P.R. LBR 9013-1(b) and 9013-2(a); (ii) this court has already decided on multiple occasions that Banco Popular can discover evidence pursuant to the "special circumstances exception" (Docket Nos. 77, 79, 156, 234, 240 & 241); (iii) on March 16, 2009, the parties filed a joint discovery plan and the Involuntary Debtor agreed to perform discovery on both the number of creditors and the "special circumstances" issue (Docket No. 80), thus the Involuntary Debtor is precluded from rearguing that Banco Popular waived the "special circumstances exception;" (iv) discovery disputes cannot be raised without a meet and confer certification under P.R. LBR 7037-1(b); (v) the Involuntary Debtor's inclusion of a privileged e-mail from Banco Popular's former counsel to evince that he offered $2,000,000 to Banco Popular is inadmissible because it is in the Spanish language and a settlement communication under Fed. R. Evid. 408 is inadmissable; and (vi) Banco Popular's alleged failure to comply with discovery and produce the "loan documents" is moot because the Involuntary Debtor's former counsel had inspected and obtained copies and the Involuntary Debtor's new counsel also inspected the original files and obtained copies of the documents (Docket No. 368). On May 25, 2011, Popular Auto filed its Motion to Join Banco Popular's Motions in Dockets 368 & 369 (Docket No. 370). On May 31, 2011, Dr. Reyes filed a motion requesting an extension of time of ten (10) days to file an Omnibus Response to Docket Nos. 360, 64, 366, 368 & 370 (Docket No. 371).

Subsequently, on June 1, 2011, Banco Popular filed its opposition to the motion to vacate Order and for entry of finding (Docket No. 345) and partial opposition to motion for summary judgment by which it presents the following arguments: (i) the Involuntary Debtor at the time of the

33

petition had less than twelve (12) qualified creditors pursuant to 11 U.S.C. §303(b)(1) and (2) and certain creditors such as; secured creditors, creditors with contingent claims, creditors with claims that have been disputed, claims of insiders and claims of recipients of voidable transfers under 11 U.S.C. §544 *et seq.* must be excluded; (ii) "...of the twenty-two creditors alleged by Dr. Reyes, twenty-one must be excluded from the count in Section 303(b)(2) for one or more reasons set out in Section 303(b); and (iii) the Involuntary Debtor bears the burden of proving that he has more than twelve qualified creditors and he has failed to establish that he has 12 qualified creditors in this case (Docket No. 372). On June 1, 2011, Popular Auto filed a Motion to Join Banco Popular's Motion at Docket No. 372 (Docket No. 374). On June 2, 2011, the Court granted the Involuntary Debtor's motion by which he requested an extension of ten (10) days to file an omnibus reply (Docket No. 375).

On June 10, 2011, Dr. Reyes filed his omnibus response and opposition to Dockets Nos. 360, 364, 366, 368 & 370 which includes his opposition to Banco Popular's response to the Involuntary Debtor's supplemental motion to dismiss (Docket No. 380). On June 14, 2011, Dr. Reyes filed a motion requesting an extension of time of seven (7) days to file his response to Docket Nos. 372 & 374 (Docket No. 381). On June 16, 2011, the Court granted Dr. Reyes' request for an extension of time to file his response to Docket Nos. 372 & 374 (Docket No. 382). On June 21, 2011, the Involuntary Debtor filed a second motion requesting an additional extension of time of two (2) days to file his response to Docket Nos. 372 & 374 (Docket No. 384). On June 21, 2011, Banco Popular filed a Motion for Leave to File Reply to Debtor's Omnibus Response and Opposition to Docket Nos. 360, 364, 366, 368 & 370 (Docket No. 385). On June 22, 2011, the Court granted the Involuntary Debtor's request for a two (2) day extension to reply to Docket Nos. 372 & 374 (Docket No. 386). On June 22, 2011, the Court granted Banco Popular's request for a seven (7) day extension of time to reply to Involuntary Debtor's Omnibus Response (Docket No. 387).

On June 23, 2011, the Involuntary Debtor filed his response to Banco Popular's partial opposition to motion for summary judgment based upon the following arguments: (i) a "claim" pursuant to 11 U.S.C. §101(5) "...includes secured, unsecured, disputed and contingent claims and, certainly, holders of disputed or contingent claims may participate in the case;" (ii) Section 101 of

34

the Bankruptcy Code is used to determine the number of creditors as of the date of the filing of an involuntary petition; and (iii) "11 U.S.C. §303(b)(1) and (2) simply and unequivocally do not provide that claims of secured creditors, creditors with contingent claims, creditors with claims that have been disputed, must be excluded from the computation regarding the number of creditors. This is a blatant misrepresentation by Banco Popular and Popular Auto, as evidenced by the Bankruptcy Code's clear language" (Docket No. 388). On June 29, 2011, Dr. Reyes filed a Motion Regarding Submitted and Pending Fed. R. Civ. P. 59(e) and Number of Creditors Motions requesting the Court to rule upon the Fed. R. Civ. P. 59(e) issue and the number of creditors issue (Docket No. 392). On June 29, 2011, Banco Popular filed its Sur-Reply to Involuntary Debtor's Omnibus Response and Opposition to Dockets Nos. 360, 364, 366, 368 & 370 arguing that; (i) the special circumstances doctrine does not need to be decided, unless there is a finding that the alleged debtor had 12 or more qualified creditors as of the date of the filing of the involuntary petition; (ii) discovery should not have ben stayed because the same elements of the special circumstances doctrine are applicable to the second determination, which is, whether the alleged debtor was generally not paying his debts as they became due; and (iii) Dr. Reyes is estopped from raising the waiver issue over two (2) years after the ruling allowing discovery and after the parties filed their joint discovery plan whereby the same agreed to conduct discovery regarding the special circumstances doctrine (Docket No. 393). Banco Popular also filed its Sur-Reply to Involuntary Debtor's Response to Docket Nos. 372 & 374 (Docket No. 394). On July 6, 2011, Banco Popular filed a Motion for Leave to file Spanish Exhibit to support its sur-reply (Docket No. 395). On July 19, 2011, Banco Popular filed a Motion Submitting Certified English Translation in Support of Docket No. 394 (Docket No. 397).

On November 22, 2011, the Involuntary Debtor filed an Informative Motion whereby he informs the Court; (i) that he has been five (5) years in this involuntary bankruptcy and there has been no change in the *status quo* of the case (ii) Fed. R. Bankr. P. 1013 provides that, in the case of a contested petition, "[t]he court shall determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order;" and (iii) the issues pending before this Court involve dispositive motions that are fully briefed and orally discussed before the Court (Docket No. 398). On December 9, 2011, Banco

35

Popular filed its Response to the Involuntary Debtor's Informative Motion by which it presents the following arguments; (i) "Dr. Reyes's ... own actions have considerable delayed the speedy resolution of the case;" (ii) not all issues pending resolution are ripe for adjudication such as Relief under Fed. R. Civ. P. 56(d) (Docket No. 360) and Dr. Reyes' motion for summary judgment (Docket No. 331) regarding the special circumstances doctrine; and (iii) the only material issue which is ripe for adjudication is whether Dr. Reyes had more than twelve (12) creditors at the time the involuntary petition was filed (Docket No. 399). On December 13, 2011, Dr. Reyes filed his Response to Opposition to Informative Motion arguing that the Motion to Vacate Order and for Entry of Finding (Docket No. 345), Supplemental Motion to Dismiss Case on Several Alternate Grounds (Docket No. 352), and the Omnibus Response and Opposition to Dockets Nos. 360, 364, 366, 368 & 370 (Docket No. 380) are all ripe for adjudication (Docket No. 400). On December 21, 2011, counsel for Banco Popular filed an Informative Motion Re: Notice of Unavailability whereby she informs that she will be away from the United States jurisdiction from December 26, 2011 through January 12, 2012 (Docket No. 401). On December 22, 2011, the Court granted the motion filed by Banco Popular's counsel regarding the notice of unavailability (Docket No. 402).

*Legal Issues*

Five years after the date (November 22, 2006) of the filing of Dr. Reyes' involuntary bankruptcy petition, there are only two (2) petitioning creditors; namely Banco Popular and Popular Auto. At this juncture, the only issue that is before the court is whether the Involuntary Debtor at the time the bankruptcy petition was filed on November 22, 2006 had more or less than twelve (12) creditors. At the April 29, 2011 hearing Dr. Reyes stipulated that as of the date of the filing of the involuntary petition he had twenty-two (22) creditors in conformity with the creditors listed in the Expert Witness Report at Docket No. 331 (Docket Nos. 356 & 358). Contrary to the Involuntary Debtor, Banco Popular and Popular Auto allege that of the twenty-two (22) creditors listed by Dr. Reyes, only one (1); namely, Popular Auto is a qualified creditor under 11 U.S.C. §303(b)(1) and (2).

The determination of whether the special circumstances doctrine applies in the instant case hinges upon the number of creditors Dr. Reyes had at the time of the bankruptcy petition. If the court determines that Dr. Reyes at the time of the bankruptcy petition had twelve (12) or more creditors,

36

Banco Popular's involuntary bankruptcy petition would be defective and thus, special circumstances would have to be present for the latter to have standing to file an involuntary bankruptcy petition against Dr. Reyes. If the petitioning creditors prove that special circumstances are indeed present in this case, then the court would have to determine whether the Involuntary Debtor was "generally not paying such debtor's debts as such debts become due" pursuant to 11 U.S.C. §303(h)(1) in order to grant the order of relief in this case.

<u>Applicable Law & Analysis</u>

*Involuntary Bankruptcy Petitions*

Involuntary bankruptcies may only be filed under chapters 7 and 11 of the Bankruptcy Code and certain persons are expressly excluded from being subject to an involuntary bankruptcy pursuant to 11 U.S.C. §303(a). Generally, involuntary bankruptcies are filed by creditors in cases of business mismanagement and in cases in which the potential debtor is transferring assets in anticipation of creditor lawsuits and/or proceedings because the involuntary filing can serve as a vehicle to prevent diminution of assets by an involuntary debtor and provide unsecured creditors with a more equitable treatment. <u>See</u> Alan N. Resnick & Henry J. Sommer, 2 <u>Collier on Bankruptcy</u> ¶303.01 (16th ed. 2011); Hon. Nancy C. Dreher & Hon. Joan N. Feeney, <u>Bankruptcy Law Manual</u>, §14.1 (5th ed. 2011). Despite the fact that the threat of an involuntary petition may be used by creditors as a way of gaining leverage with a potential debtor, if the same fails the creditors may face serious consequences such as sanctions, the imposition of awards for damages by a court. <u>See</u> Hon. Nancy C. Dreher & Hon. Joan N. Feeney, <u>Bankruptcy Law Manual</u>, §14:2 (5th ed. 2011). Thus, before filing an involuntary bankruptcy petition serious thought must be given because of "the potential of doing great harm [to the] debtor, including loss of the right to use of transfer property, consequences from the denial of credit, and even embarrassment. An involuntary petition is a wonderful weapon and therefore the Code and Federal Rules of Bankruptcy Procedure include numerous requirements and restrictions to curtail misuse and to insure that the remedy is sought only in appropriate circumstances." <u>Id</u>. at §14.1.

Once the involuntary bankruptcy petition is filed a bankruptcy estate is created under 11 U.S.C. §541(a) and the provisions of the automatic stay under 11 U.S.C. §362(a) come into effect. If the petitioning creditors believe that the debtor is depleting estate assets, they may request the

appointment of an interim trustee under 11 U.S.C. §303(g), before the order of relief is entered pursuant to 11 U.S.C. §303(h). If the involuntary debtor contests the involuntary petition the following defenses and issues are generally raised;

"-lack of eligibility to be a debtor under the creditor's selected chapter under the Code;
-status as a farmer, family farmer, or nonprofit organization;
 -number of petitioning creditors;
- nature and/or amount of each petitioning creditor's claim;
-contingent claims, or;
-claims subject to a bona fide dispute;
-aggregate amount of the debts of the petitioning creditors is less than $14,425 over the amount of any security for the claims;
-lack of statutory grounds for relief;
-generally not paying debts as they become due, and/or
-pre-petition custodian appointed;
-lack of bad faith or improper motive of petitioning creditor(s) in commencing the involuntary case." David S. Kennedy, James E. Bailey III & R. Spencer Clift, III, The Involuntary Bankruptcy Process: A Study of the Relevant Statutory and Procedural Provisions and Related Matters, 31 U. Mem. L. Rev. 1, 6-7 (2000).

If an involuntary bankruptcy petition is contested it is most often because of the following issues; (i) eligibility issues; (ii) the issue of whom such an involuntary petition may be filed; and (iii) the issue of whether an order for relief under 11 U.S.C. §303(h) should be entered. Id at 7. Once the order of relief is entered under 11 U.S.C. §303(h), the involuntary bankruptcy is generally administered in much the same manner as a voluntary case.

*Requirements under 11 U.S.C. §303(b)*

Section 303(b) provides in pertinent part that, "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title–

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability of the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $14,425 of such claims." 11 U.S.C. §303(b).

The number of petitioning creditors necessary to file an involuntary petition is determined by the number of eligible creditors that hold qualified claims against the involuntary debtor. See William L. Norton, Jr., 2 Norton Bankruptcy Law and Practice 3d §22:2. "The basic requirement under section

303(b)(1) is that if the debtor has 12 or more eligible "creditors" (holding claims that are not contingent as to liability and not subject to a bona fide dispute as to liability or amount and excluding from that calculation certain specifically enumerated holders), three or more petitioning creditors are needed. If the debtor has fewer than 12 creditors (holding claims that are not contingent as to liability and not subject to a bona fide dispute as to liability or amount and excluding from that calculation certain specifically enumerated holders), one petitioning entity, under appropriate circumstances, is expressly permitted by statute to commence an involuntary petition." Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.14[1] (16th ed. 2011). The number of eligible creditors (holders of claims) is determined on the date the involuntary petition is filed. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.14[3] (16th ed. 2011). Also, a creditor that holds two different qualified claims is considered as one holder of two (2) claims, and thus is counted once towards the number of creditors requirement under Section 303(b)(1) and (2). See William L. Norton, Jr., 2 Norton Bankruptcy Law and Practice 3d §22:5.

Creditors that hold claims that are contingent as to liability and are subject to a *bona fide* dispute may not be eligible creditors under 11 U.S.C. §303(b)(1) and (2). Also, certain creditors such as employees, insiders and transferees of a voidable transfer under 11 U.S.C. §§544, 545, 547, 548, 549, and 724(a) are statutorily excluded from being counted towards the number of eligible creditors count pursuant to Section 303(b)(2). See 11 U.S.C. §303(b)(2); Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.14[2] (16th ed. 2011). These creditors are excluded from the creditor numerosity count because, "[t]he policy behind the exclusion of these creditors is that they are likely to be friendly to the debtor or have a self-interest which makes it likely that they would not support a bankruptcy because of their special relationship with the debtor. The employee may loose a job if the debtor is in bankruptcy, the insider may be biased in favor of protecting the debtor against bankruptcy, and the creditor who has obtained a voidable transfer or line does not want to be subjected to an avoidance action by the trustee for the return of the property or damages." Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, §14:9 (5th ed. 2011). However, despite the fact that these excluded creditors do not count towards the numerosity requirement, if they have claims they may be petitioning creditors under 11 U.S.C. §303(b). See Alan N. Resnick & Henry J.

Sommer, 2 Collier on Bankruptcy ¶303.14[3] (16th ed. 2011);  Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, §14:9 (5th ed. 2011) ("Courts are divided on the issue of whether those creditors who are excluded from the count of 12 creditors may still act as petitioning creditors. The weight of authority is that excluded creditors qualify as petitioning creditors.").

The term "claim" is defined in conformity with Section 101(5) but does not include the statutorily excluded creditors pursuant to 11 U.S.C. §303(b).  Banco Popular and Popular Auto argue that of the 22 creditors Dr. Reyes alleges he had at the time of the filing of the involuntary bankruptcy twenty-one (21) are not holders of qualified claims, and thus do not count toward the number of creditors requirement under Section 303(b)(1) and (2). The court will discuss herein whether these creditors hold qualified claims under 11 U.S.C. §303(b)(1) and (2).

*Burden of Proof Regarding the Number of Creditors Requirement*

If there are fewer than three (3) petitioning creditors that filed the involuntary petition and the involuntary debtor alleges that he or she has more than twelve (12) creditors, then the debtor has the burden to raise this issue by filing a list pursuant to Fed. R. Bankr. P. 1013(b)[2]. Once the debtor complies with Fed. R. Bankr. P. 1003(b), the burden shifts to the petitioning creditors to prove that the alleged involuntary debtor has less than twelve (12) eligible creditors. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.14[9] (16th ed. 2011); In re Euro-American Lodging Corp., 357 B.R. 700, 714 (Bankr. S.D.N.Y. 2007); Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F. 2d 709, 715 (4th Cir. 1993); Banco Popular de Puerto Rico v. Reyes Colon (In re Reyes Colon), 2008 Bankr. Lexis 3960, at *10-11 (B.A.P. 1st Cir. 2008).

Banco Popular argues that it is the involuntary debtor that has the burden of proving that it has 12 or more qualified creditors. Banco Popular supports its argument citing Cunningham v. Rothery (In re Rothery), 143 F. 3d. 546, 549 (9th Cir. 1998) in which the Ninth Circuit reversed the

---

[2] Fed. R. Bankr. P. 1003(b) provides; "[i]f the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in §303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon." Fed. R. Bankr. P. 1003(b).

B.A.P. and reinstated the Bankruptcy Court's Order regarding the number of creditors issue because the debtor's opposition to summary judgment was based on "mere allegations." The Bankruptcy Court in In re Rothery concluded regarding the number of creditors issue that, "as of this date, there is no evidence before this Court that Ms. Rothery does have 12 or more undisputed creditors. She has merely made unsubstantiated assertions that she does-- without much as including the dates the debts were allegedly incurred–have more than 12 [creditors]." In re Rothery, 143 F. 3d at 548. In re Rothery is inapposite to the instant case in which Dr. Reyes has submitted documentary evidence to support his position. (Docket Nos. 331 & 345).

*The Involuntary Debtor's Alleged Creditors Analysis*

Dr. Reyes alleged creditors as of November 22, 2006 pursuant to the expert witness report (Docket No. 331) are the following:

| Creditor | Reference | Balance Due |
|---|---|---|
| 1. R&G Financial Corp. | Mortgages (2) | $1, 547,941 |
| 2. Popular Auto | Lawsuit | $213,467 |
| 3. Medicoop | Auto | $31,736 |
| 4. Eurobank | Auto | $67,872 |
| 5. Westernbank | Credit Line | $104,287 |
| 6. Bank of America | Credit Card | $73,575 |
| 7. AEE | AEE | $227 |
| 8. AAA | AAA | $226 |
| 9. Miami Dade County | Property Taxes | $7,366 |
| 10. COS Insurance | Insurance | $3,353 |
| 11. PRT | Telephone | $36 |
| 12. Brickell Bay HOA | HOA | $837 |
| 13. Iguina Oharriz Law Firm | Legal Fees | $2,354 |
| 14. Banco Santander | Auto | $20,147 |
| 15. Citibank | Credit Card | $21,316 |
| 16. Secretary of the Treasury | Income Tax 2006 | $36,704 |
| 17. Cingular | Mobile | $113 |

| 18. Dorado Beach HOA | HOA | $707 |
| --- | --- | --- |
| 19. Iris Eileen Tañon Correa | Pension | $2,250 |
| 20. Galería del Parque | Personal | $1,015 |
| 21. Liberty Cable | Cable TV | $107 |
| 22. Sun Com | Phone | $155 |

The court will address each creditor's eligibility to be counted for the purpose of establishing the number of creditors that the Involuntary Debtor had as of the date the involuntary petition was filed.

**R&G Financial Corporation (#1) & MediCoop (#3)**

The Involuntary Debtor at the time of the bankruptcy petition had two (2) mortgage loans with R&G Financial Corporation secured by two (2) real estate properties. The first mortgage loan was for the principal amount of $1,212,570 (Dorado Beach East property) and at the time the bankruptcy petition was filed the monthly payment was of $10,395 and it had a principal balance of $1,065,418.04 (Docket No. 331, Exhibit B-38-41). The second mortgage loan was for the principal amount of $546,570 (St. Mary's Plaza apartment) and at the time the bankruptcy petition was filed the monthly payment was of $4,759 and it had a principal balance of $482,523.46 (Docket No. 331, Exhibit B-42-43). The Expert Witness Report includes a Statement of Assets and Liabilities as of November 22, 2006, in which the estimated market value of the Dorado Beach East property was $1,347,300 based on an independent appraisal report dated as of March 4, 2004 (Docket No. 331, Exhibit B-29 & B-33). The Expert Witness Report includes the estimated market value of the St. Mary's apartment in the amount of $607,300 based on an independent apprisal report dated as of March 1, 2004 (Docket No. 331, Exhibit B-29 & B-32). Thus, at the time of the involuntary bankruptcy filing R&G Financial Corporation was a secured mortgage holder of these two (2) properties, which at the time were over-secured.

Dr. Reyes at the time of the bankruptcy petition had two (2) automobile loans with MediCoop which as of November 22, 2006 had an outstanding balance of $31,736 (Docket Nos. 331, Exhibit Expert Witness Report, pg. 11, Exhibit B-55, Docket No. 345, Exhibit #14). Banco Popular alleges that as of November 1, 2006, the balances of the car loans were $24,748.55 and $31,736.09 (Docket

No. 331, pg. 6). The court notes that Dr. Reyes' MediCoop statement from 01/01/2006 to 12/31/2006 reflects that Dr. Reyes had two (2) car loans; the first loan had a balance of $24,748.55 as of 10/24/06 and on 11/30/06 this debt was paid off in its entirety with check #13008 in the amount of $24,892.20; the second car loan had a balance of $31,736 as of 11/25/06. Banco Popular argues that the car loans were not only guaranteed by the cars but also with certain shares at MediCoop which had a value of $300,000.00 (Docket No. 331, Exhibit B-5), thus MediCoop is an oversecured creditor which must be excluded for purposes of determining whether the Involuntary Debtor had 12 or more qualified creditors (Docket No. 331, pg. 6).

Banco Popular argues that under 11 U.S.C. §303(b)(1) the three or more petitioning creditors must hold an aggregate of $14,425 in unsecured claims, meaning that secured creditors may not commence an involuntary bankruptcy proceeding. The court finds that this argument is misplaced simply because R&G Financial Corporation is not a petitioning creditor. Moreover, a secured creditor may be a petitioning creditor if the other petitioning creditors' noncontingent, undisputed, unsecured claims aggregate to the amount of $14,425. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.12[2] (16th ed. 2011); In re Tucker, 2010 Bankr. Lexis 3971, at *21(Bankr. N.D. W. Va. 2010). The second argument Banco Popular presents is that Section 303(b)(2) reference to the "12 such holders" clearly refers only to the unsecured, non-contingent and undisputed creditors required by Section 303(b)(1). This court finds that this argument is also misplaced because fully secured creditors are counted towards the numerosity requirement of eligible creditors. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.12[2] (16th ed. 2011) ("Further, the use of the word 'aggregate' in section 303(b) applies only to the creditors commencing the case; fully secured creditors are still entitled to be counted to determine the debtor's total number of creditors"). (Collier- 303.12[2]); See also In re Evans, 1997 Bankr. Lexis 1073, at *36 (Bankr. E.D. Va. 1997). Thus, this court finds that R&G Financial Corporation and MediCoop must be included as eligible creditors pursuant to 11 U.S.C. §303(b)(1) and (2).

**Eurobank (#4) & Banco Santander (#14)**

*Eurobank*

Dr. Reyes at the time of the involuntary bankruptcy petition had a vehicle financing lease with

43

Eurolease, a division of Eurobank, in which the monthly payments were in the amount of $2,140.09 (Docket No. 345, Exhibit 11). Dr. Reyes submitted the payment history for this lease which includes payments from 07/22/04 until 08/22/08. Banco Popular presents three (3) arguments supporting its position as to the exclusion of this creditor; namely; (1) there was no debt to Eurobank at the moment of the filing of the bankruptcy petition because the account was current (payment was received on 11/22/06); (2) Dr. Reyes has to assume the lease pursuant to 11 U.S.C. §365(d)(2) to trigger his obligation to pay the same, thus his claim is contingent upon the happening of a future event pursuant to 11 U.S.C. §303(b)(1) and (2); and (3) "[t]he total amount of future payments under the financing lease totaled $41,826.00. According to Dr. Reyes, the vehicle had an estimated value of $100,000. As such, Eurobank could not be considered an unsecured creditor on the date of the filing of the bankruptcy petition" (Docket No. 372, pg. 8).

Neither party has submitted the vehicle financing lease agreement in its entirety to the court. However, Eurolease on May 17, 2007 filed proof of claim #8-1, in the amount of $37,419.83 for an unsecured claim. Eurolease as part of its proof of claim filed the entire lease agreement in the Spanish language. The Eurolease agreement was executed on June 22, 2004, and the same consisted of a lease term of fifty (50) months and monthly payments of $2,140.09 due on the 22nd of each month. The lease agreement also includes the option of buying the leased vehicle prior to the expiration of the lease. The Statement of Assets and Liabilities as of November 22, 2006 includes the vehicle (1998 Ferrari 355 Spyder) as an asset of Dr. Reyes which was purchased on June 22, 2004 (Docket No. 331, Exhibit Expert Witness Report, B-18 ). The payment history of this lease agreement shows that the Involuntary Debtor completed all of the lease payments under the lease term on August 25, 2008. In the instant case, an order for relief has not been entered, thus Section 365(d) has not been triggered. Moreover, section 365 is not the basis for establishing whether a claim is contingent. The court finds that at the date of the bankruptcy petition, Eurolease was an eligible creditor of the Involuntary Debtor, since there was a valid and outstanding lease agreement at the time of the bankruptcy filing and according to Banco Popular, Dr. Reyes owed $41,826.00 in future lease payments. The lease is really the current claim and if the same is not paid, there is personal liability against Dr. Reyes. See In re Green, 2007 Bankr. Lexis 1296 (Bankr. W.D. Tex. 2007). As discussed

44

previously, fully secured creditors are counted towards the numerosity requirement. Moreover, the court notes that if Dr. Reyes had a vehicle financing lease in which the underlying transaction was a financing arrangement, then Section 365 would be inapplicable, given that it would not be a "true lease". See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶365.02[3] (16th ed. 2011). The issue is not before the court. However, irrespective of whether the contract is a true lease or a financing agreement, Eurolease was a creditor of Dr. Reyes as of the date the involuntary petition was filed.

*Banco Santander*

Dr. Reyes alleges that at the time of the involuntary bankruptcy petition he had a vehicle financing lease with Banco Santander Puerto Rico in which the monthly payments were in the amount of $495 (Docket No. 331, Exhibit Expert Witness Report, pg. 11). Dr. Reyes submitted a copy of Exhibit A of the financing lease agreement for a Dodge Durango SLT (year 2004) which was executed on June 30, 2004, and the same consisted of a minimum contract term of seventy-two (72) months and monthly payments of $495.23 due on the 15th of each month (Docket No. 331, Exhibit B-59). Exhibit A of the financing lease agreement includes a line item regarding the option of buying this vehicle for $1.00.

Banco Popular argues that Banco Santander should be excluded as a creditor based upon the following reasons; (i) no evidence of any type of debt to Banco Santander was presented by Dr. Reyes; (ii) "...the falseness of the allegation of Dr. Reyes under oath, and that of his expert, is demonstrated by another document on the record. A review of the credit report submitted early in this case [Docket No. 10], issued by Equifax on December 14, 2006 at the request of Dr. Reyes, which was also used by his expert to allegedly ascertain the credit experience of Dr. Reyes, clearly shows that there were no amounts owed ("0") under any of the credit facilities that Dr. Reyes previously had with Banco Santander" (Docket No. 372, pgs. 28-29). Dr. Reyes argues that the evidence regarding the vehicle financing lease is uncontested because the financing lease agreement was submitted to this court by Dr. Reyes (Docket No. 388, pg. 12). That Dr. Reyes was current on his monthly payments does not exclude the obligation owed for the unpaid balance of the contract under its terms. This court finds that Banco Popular has the burden of proving that Banco Santander is not a valid creditor and

it has not met their burden on this particular creditor, despite the fact that it had ample time to conduct discovery. Thus, this court concludes that Banco Santander is an eligible creditor.

**Westernbank #5**

The Involuntary Debtor alleges that at the time of the bankruptcy petition he had three (3) outstanding lines of credit with Westernbank. Both parties agree that the first line of credit is under the name of Dr. Reyes and as of 11/03/06 had a balance of $47,412.61 and as of 12/04/06 it had a balance of $48,512.61 (Docket Nos. 331, Exhibit B-51, Docket No. 345, Exhibit Westernbank). The court notes that in the documentation presented for this line of credit, Dr. Edgar A. Reyes appears as the short name for this line of credit. The Expert Witness Report indicates that a monthly payment of $1,000.00 is paid for this line of credit (Docket No. 331, Exhibit Expert Witness Report, pg. 13). The second line of credit, appears to be under the name of Star Angel Corp., as the document presented indicates Star Angel Corp. as the short name for this line of credit (Docket No. 345, Exhibit Westernbank). The second line of credit under Star Angel Corp. had an account balance of $13,357.19 on 11/03/06 and on 11/24/06 it had a balance of $14,057.19. The Expert Witness Report indicates that a monthly payment of $300.00 is paid for this line of credit (Docket No. 331, Exhibit Expert Witness Report, pg. 13). Dr. Reyes also included the application for this particular line of credit in which he appears as the co-applicant for this $15,000.00 line of credit. The third line of credit, appears to be under the name of Cosmetic and Hair Surgery Center, P.S.C. The documentation submitted indicates Cosmetic and Hair Surgery, P.S.C., as the short name for this line of credit and is guaranteed by Dr. Reyes (Docket Nos. 345, Exhibit Westernbank, Docket No. 372, Exhibit 1). The Expert Witness Report indicates that a monthly payment of $1,000.00 is paid for this line of credit (Docket No. 331, Exhibit Expert Witness Report, pg. 13).

*Personal Line of Credit*

Banco Popular argues that Westernbank is not an eligible creditor with respect to Dr. Reyes' personal line of credit, based upon the following; (i) Dr. Reyes made various payments which totaled $5,000.00 to Westernbank within the ninety (90) day period before the filing of the involuntary petition, which are voidable under 11 U.S.C. §547(b); (ii) Dr. Reyes' statement of assets and liabilities shows that Dr. Reyes had $1,924,503 excess of assets over liabilities but the same excluded

46

the debt in excess of $2,346,405.43 (as of 2005) owed to Banco Popular; and (iii) Dr. Reyes also made various post-petition payments to Westernbank for this particular line of credit, thus "[c]reditors who are recipients of preferential transfers are likewise disqualified by their receipt of transfers voidable pursuant to Section 549 when the payment is made towards an unsecured debt that arose before the commencement of the case. In re Euro American Lodging Corp., 2007 Bankr. Lexis 15 (Bankr. S.D.N.Y. 2007)" (Docket No. 372, pg. 14). The court notes that the Involuntary Debtor did not present any argument regarding the alleged voidable post-petition transfer pursuant to Section 549.

Section 303(b)(2) specifically excludes certain creditors from counting towards the numerosity requirement if they have received voidable transfers during the "gap period." The "gap period" is the period between the filing of the involuntary petition and the entry of the order of relief. Post-petition transfers to satisfy pre-petition debt made during the "gap period" may be voidable and exclude the creditor from the numerosity requirement count pursuant to 11 U.S.C. 303(b)(2) and 549(a) and (b). Section 549 provides in pertinent part;

> "(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–
> (1) that occurs after the commencement of the case; and
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> (B) that is not authorized under this title or by the court.
> (b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case the transferee has." 11 U.S.C. §549(a) and (b).

Under Section 549(b), the post-petition transfers which are not voidable are the following; (1) post-petition transfers made under Section 303(f) or 542(c); (2) post-petition transfers made in the ordinary course of business (whether a transfer was made in the ordinary course of business is fact intensive); (3) post-petition transfers that do not involve estate property; (4) transfers that are not made after the commencement of a case; (5) generally post-petition transfers to secured creditors; and (6) post-petition transfers made during the "gap period" in which post-petition value is given in exchange for the transfer. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶549.04[1]-549.05 (16th ed. 2011). However, there is no exception under 11 U.S.C. §549 for post-

47

petition transfers made during the "gap period" to satisfy a pre-petition debt. See In re Altwood, 124 B.R. 402, 406 (S.D. Ga. 1991); In re Evans, 1997 Bankr. Lexis 1073, at *23-24 (Bankr. E.D. Va. 1997) ("The rationale for this exclusion was recognized in In re Brooklyn Overall Co., Inc., 57 B.R. 999 (Bankr. E.D. N.Y. 1986): 'the operative impulse of §549(b) is meant to curb abuses and protect the estate from dissipation during the "gap period." In corollary intendment, it seeks to preserve the Code's objective by preserving the quality of distribution to all creditors, including the rights of a "gap" transferee for value'").  Under Section 549(b) there is no requirement that the value provided for a transfer be made prior to or contemporaneously with the transfer. "Value, which should be determined from the giver's not the debtor's, perspective includes services but does not include satisfaction or securing of a prepetition debt." See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶549.05 (16th ed. 2011).

Dr. Reyes's balance on his personal line of credit with Westernbank as of November 3, 2006 was $47,412.61.  On December 4, 2006 an additional disbursement was made by the bank to the personal line of credit increasing the account balance to $48,512.61. On that same date, Dr. Reyes made a payment to the line of credit in the amount of $1,053.47 decreasing the account balance to $47,858.32. This court notes that the account balance on December 4, 2006 ($47,412.61) was greater than on November 3, 2006 ($47,858.32), meaning that Dr. Reyes actually owed more monies to Westernbank under this particular line of credit. Consequently, this court concludes that under 11 U.S.C. 549(a) and (b), Dr. Reyes did not satisfy his line of credit debt by means of post-petition payments, rather he increased the same subsequent to the filing of the involuntary petition due to additional disbursements received by the bank. Thus, Westernbank is an eligible creditor under 11 U.S.C. §303(b)(1) & (2) as Section 549 is inapposite to the facts of this case.

Under 11 U.S.C. 547(b), the analysis is more complicated, because of the five (5) requirements that must be met to classify a certain payment made by the debtor as a preference payment, and thus avoid the same. Section 547(b) provides in pertinent part;

"...the trustee may avoid  any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

48

(3) made while the debtor was insolvent;
(4) made–
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if–
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. §547(b).

The pre-petition payments made by Dr. Reyes to Westernbank within the ninety (90) day period before the filing of the involuntary petition totaled $2,976.77 (the payments included are the two payments dated as of 10/11/06, the payment of 11/03/06 minus the additional disbursement from Westernbank dated as of 11/03/06).  The only requirement which was contested is the requirement of balance sheet insolvency pursuant to 11 U.S.C. §547(b)(3). The statutory presumption provided in Section 547(f) is that the "debtor is presumed to have been insolvent on and during the 90 days immediately preceding the  the date of the filing of the petition" results in that the debtor must submit some evidence to rebut the presumption, but the trustee has the burden of proof regarding the insolvency at the time of the transfer. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶547.03[5](16th ed. 2011). This court finds that the balance sheet insolvency test is satisfied because Banco Popular's claim is not subject to a *bona fide* dispute as discussed herein, thus it has to be included as a liability which would result in an excess of liabilities over assets for the Involuntary Debtor as of November 22, 2006. However, despite the voidable preference transfers and post-petition payments, Westernbank is still a creditor because Dr. Reyes did not satisfy in its entirety his line of credit debt. This court concludes that the preference transfers and post-petition payments made are voidable to the extent of the amounts of the voidable transfers, not the entire balance of the debt. It is unnecessary to determine whether Dr. Reyes made post-petition transfers and/or preference payments on the other two credit lines with Westernbank, given that this court already determined that Westernbank is an eligible creditor under 11 U.S.C. §303(b)(1) & (2).

**Bank of America (#6) & Citibank (#15)**

*Bank of America*

Dr. Reyes alleges that at the time of filing the involuntary bankruptcy petition he had a credit

card with Bank of America which had a balance of $73,575 and that he made monthly payments of $735.00 towards this credit card debt (Docket No. 331, Exhibit Expert Witness Report, pgs. 11& 13, & Exhibit B-52). Dr. Reyes submitted as supporting evidence the Bank of America November 2006 statement which indicates that under this account there was a credit line of $76,300 available and $2,725 in cash or credit available. The last payment was for $1,500.00 and it was posted on October 26, 2006 and the new balance total was of $73,575. The closing date of this statement was November 6, 2006 and a payment of $735.00 was due on December 5, 2006 (Docket No. 331, Exhibit B-52). Banco Popular argues that Bank of America must be excluded due to the following; (i) Dr. Reyes made a preferential payment of $1,500.00 within the required ninety (90) days on account of an antecedent debt; (ii) this preferential payment was in excess of the minimum payment required, enabling the creditor to receive more than it would in a chapter 7 case if the payment had not been made; (iii) no new value was provided by Bank of America, thus said payment is an avoidable preference; and (iv) at least one post-petition transfer in the amount of $2,000.00 was made by Dr. Reyes from the Statement of Account dated January 7, 2007 (Docket No. 372, pg. 15). The Involuntary Debtor argues the following; (i) Banco Popular's claim is vague and in general terms; and (ii) the allegations as to preferential payments is unsubstantiated due to the expert witness (Rafael Rosario, Esq., CPA, CVA) determination of solvency at the time of the bankruptcy petition, thus no unsecured creditors were adversely affected on account of payments made by a solvent debtor to bona fide debts (Docket No. 388, pg. 7, paragraph 17).

This court finds that the December 2006 Bank of America Statement had a closing date of 12/06/06 and a payment due date of January 7, 2007 and the total amount owed was $73,575. A payment of $2,000 was posted on November 25, 2006 resulting in a new balance total of $71,575 (Docket No. 372, Exhibit 2). This court further finds the $1,500 pre-petition payment for an antecedent debt which was made on October 26, 2006 was a preference payment in conformity with 11 U.S.C. §547(b).  However, this court finds that while the $2,000.00 payment was a post-petition transfer made by Dr. Reyes during the "gap period" to satisfy a pre-petition debt, and the $1,500 pre-petition payment constituted a preference payment, Bank of America is not excluded pursuant to 11 U.S.C. §303(b) and 549(a) and (b) as there was still a pre-petition balance owed to Bank of America.

50

This court concludes that the preference transfer and the post-petition payments made are voidable to the extent of the amounts of the voidable transfers, not the entire balance of the debt.

*Citibank*

Dr. Reyes alleges that at the time of filing the involuntary bankruptcy petition he had a credit card with Citibank which had a balance of $21,316 and that he made monthly payments of $649.45 towards this credit card debt (Docket No. 331, Exhibit Expert Witness Report, pgs. 11 &13 & Exhibit B-54). Dr. Reyes filed the Citibank November 2006 statement which reflects a previous unpaid balance for the October 2006 statement in the amount of $7,987.00 which payment was due on November 20, 2006, current charges for the period of 10/24/06-11/24/06 of $13,050.92 and a finance charge in the amount of $278.45 for a total balance in the amount of $21,316.37. The November 2006 account statement reflects that the payment due date is 12/18/06 and that the minimum payment is $649.45. Dr. Reyes also filed the December 2006 (which covers the period of 11/25/2006-12/22/2006) Citibank account statement which reflects that two payments were received on 11/27/06 in the amount of $7,287.40 and on 12/15/06 in the amount of $7,500. The December 2006 statement reflects a prior balance of $21,316.37, current charges of $10,498.82, payments of $14,787.40, and a finance charge in the amount of $280.06 for a total balance of $17,307.85 (Docket No. 345, Exhibit Citibank).

Banco Popular argues that Citibank should be excluded as a creditor because Dr. Reyes made two (2) post-petition transfers (payments) on 11/27/06 in the amount of $7,287.40 and on December 15, 2006 in the amount of $7,500.00 that are voidable under 11 U.S.C. 549 (Docket No. 372, pgs. 30-31). The Involuntary Debtor argues that Citibank is an eligible creditor based upon "Mr. Rosario's expert witness analysis, since no unsecured creditors were adversely affected by the payments made by a solvent Reyes Colón, nor would they had been adversely affected, on accounts of payments made by a solvent debtor to *bona fide* debts." (Docket No. 388, pg. 13).

This court finds that Citibank at the time of the bankruptcy petition had a pre-petition debt in the amount of $7,987 and new charges of $13,329.37 (including the finance charge in the amount of $278.45) for a total of $21,316.37 (Docket No. 345, Exhibit Citibank-November Statement). The December 2006 Citibank statement reflects two (2) payments made on 11/27/06 in the amount of

51

$7,287.40 and another payment made on 12/15/06 in the amount of $7,500 for a total payment of $14,787.40 which exceeds by $1,459.03 the amount of new debt ( $13,329.37) disclosed in the November 2006 statement, but there is still a pre-petition balance owed to Citibank. Thus, this court concludes that while Dr. Reyes made a post-petition transfer of pre-petition debt during the "gap period," Citibank is not an excluded creditor pursuant to 11 U.S.C. §303(b) and 549(a) and (b), as there was still a balance owed to Citibank.

**AEE (#7), AAA (#8), PRT (#11), & Cingular (#17)**

*AEE*

Dr. Reyes alleges that at the time of the bankruptcy petition he owed the Puerto Rico Electric Power Authority ("AEE") $227.00 and the Puerto Rico Aqueducts and Sewers Authority ("AAA") $226.00 (Docket No. 331, pg. 9). The Involuntary Debtor submitted to the court two (2) AEE invoices, one addressed to his ex-wife Mrs. Eileen Tañon Correa (account #011 0281435 004 3) and the other to Dr. Reyes (account #025 0340184002 0). This court will not consider the invoice in which the account debtor is Mrs. Eileen Tañon Correa. The court notes that a state court divorce petition in case No. FDI-99-1200, sworn by Dr. Reyes and his ex-wife, Mrs. Eileen Tañon Correa, on January 24, 2001 and January 25, 2001 was submitted by Banco Popular as part of its opposition to motion for summary judgment. This divorce petition includes the agreements reached by Dr. Reyes and Mrs. Eileen Tañon Correa. Clause E of this petition provides that Dr. Reyes will pay the electricity and water bills corresponding to the apartment in which Mrs. Eileen Tañon Correa and his son reside for the next three (3) years. (Docket No. 372, Exhibit 3-Divorce Petition). At the time of the bankruptcy petition, the three (3) years had already lapsed. The invoice submitted to Dr. Reyes for the period of November 8, 2006 to December 8, 2006 is in the amount of $145.73 after accounting for a previous credit of $45.49. The payment due date is January 2, 2007 and the invoice and has a payment due date of January 2, 2007 (Docket No. 331, Exhibit B-66). This invoice has a "PAID" stamped on it and it has the date 12/21/06 handwritten beneath the "PAID" words. The Involuntary Debtor also submitted a letter from AEE addressed to Banco Popular's attorney which details certain account information, but the same is illegible regarding the name of the client and address, postal address, account number, billing 2006 and comments (Docket No. 345, Exhibit AEE). Dr. Reyes also

includes three (3) pages consisting of Monthly Report of Transactions for 10/06, 11/06 and 12/06 but fails to explain the same nor provides a legend of the transaction codes that the AEE employs in this monthly transaction reports. Thus, the only AEE invoice this court will consider is the one in which Dr. Reyes appears as the account holder (Docket No. 331, Exhibit B-66).

Banco Popular argues that AEE should be excluded as an eligible creditor (qualified claim) based upon the following: (i) utility debts are incurred at the time the resource is consumed rather than at the time the invoice is sent because the task of identifying or measuring the consumption of electricity is a practical impossibility; (ii) the utility debt is incurred on the date the utility meter is read; (iii) the AEE claim is contingent upon two future events; (1) the conclusion of the billing period and (2) the issuance of the invoice; (iv) the payment of any pre-petition claim amount owed is secured because the utility company requires a security deposit to commence the service and due to the rights under 11 U.S.C. §366; and (v) the *de minimis* principle has been used to exclude small recurring creditors from the list of qualified creditors (Docket No. 372, pgs. 17-19). Dr. Reyes' argues that the AEE is a qualified claim due to the following; (i) a utility debt is incurred at the time the resource is consumed rather than at the time the invoice is sent; (ii) Banco Popular's "...unfounded allegations that the claim was contingent or secured, on account of the corresponding security deposit required by AEE would not disqualify the debt from being properly scheduled as a claim;" and (iii) the *de minimis* principle is not applicable with the First Circuit (Docket No. 388, pg. 8, paragraph 18).

This court finds that Dr. Reyes' electricity bill for the period of November 8, 2006 through December 8, 2006 which payment was due on January 2, 2007, and according to what is written on the invoice the same was paid on December 21, 2006. Dr. Reyes' did not submit to this court the invoice for the prior month and evidence of the payment of the same; namely whether AEE had a claim as of the date of the filing of the bankruptcy petition. Banco Popular's arguments (i) and (ii) specifically involve the test for preference actions that may not be avoided under 11 U.S.C. 547(c)(2). However, this court finds that in the instant case, Banco Popular's arguments trying to defeat Section 547(c)(2) and which the Involuntary Debtor does not address are misplaced, given that the electricity bill payment in controversy was made after the filing of the bankruptcy petition, not before, thus, a preference action was not constituted. However, this court finds that in the instant case, as of the date

of the filing of the involuntary petition (November 22, 2006), there was no outstanding AEE claim corresponding to account #025 0340184 002 0, because the amount owed was due on January 2, 2007 and the same was paid on December 21, 2006, subsequent to the filing of this involuntary petition. Thus, this court finds that AEE' right to payment of this claim arose on the date that AEE had a right to payment pursuant to 11 U.S.C. §101(5), namely the invoice date (which does not appear on the invoice). Dr. Reyes on his Statement of Assets and Liabilities discloses that the invoice date for this particular account was December 8, 2006 (Docket No. 331, Exhibit B-64). This court finds that as of the date of the involuntary bankruptcy filing, AEE was not an eligible creditor since it did not have a claim under 11 U.S.C. §101(5).

*AAA*

Dr. Reyes alleges that at the time of filing the involuntary bankruptcy petition he owed AAA $225.86 and that the invoice/service date was November 27, 2006 (Docket No. 331, Exhibit B-64). The Involuntary Debtor submitted to the court two (2) invoices, one addressed to his ex-wife Mrs. Eileen Tañon Correa (account #11104931-003-5) and the other to Dr. Reyes (account #11564373-002-7)(Docket No. 331, Exhibit B-68). The invoice submitted to Dr. Reyes has an invoice date of 11/27/2006 and a payment due date of 12/18/2006. The amount of the payment due is $225.86. The invoice also includes the date of the actual reading of the water meter which is 11/17/2006 and the prior reading date which was 10/23/2006. Also, on the face of this invoice, it has handwritten the following: 12/07/06 #querella (claim) 2928919 Giselle paid $38.50 12/15/06." Dr. Reyes also submitted the financial details for this same account (account #11564373-002), which indicates that on 11/27/06 the billed charges were in the amount of $225.86 and a payment of $38.50 was paid on 12/19/2006 (Docket No. 345, Exhibit AAA). Dr. Reyes has another account(#11614203-001) with AAA in which he only submitted the financial details of the same. The financial details of this other account reflect that on 11/27/06 he was billed for $59.73 and a payment was made on 12/05/2006 (Docket No. 345, Exhibit AAA).

Banco Popular argues that AAA should be excluded as an eligible creditor for the same reasons as AEE. However, Banco Popular presents an additional argument for excluding AAA, which is that it seems from the handwriting on the face of the invoice which pertains to account

54

number 11564373-002-7, that the same was objected to by Dr. Reyes. Banco Popular argues that according to the "Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services," 27 L.P.R.A. §§262 *et seq*., "the subscriber has 20 days to pay or raise objections to any utilities invoice. After the agency notifies the outcome of the investigation, the subscriber then has ten days to pay the bill or further object the decision to the official of the local Office. Therefore, once the invoice is objected there is 'no right to payment' by the agency until the objection is finally resolved." (Docket No. 372, pg. 21). Dr. Reyes argues that AAA is a creditor for the same reason as AEE (Docket No. 388, pgs. 8-9).

This court concludes that Dr. Reyes' water bills for both accounts (account #s11564373-002-7 and #11614203-001) had post-petition invoice dates and payment due dates. Moreover, Dr. Reyes paid for these water bills post-petition. This court finds that the same reasoning applies to the AAA claim as to the AEE. Thus, this court finds that AAA' right to payment of this claim arose on the date that AAA had a right to payment pursuant to 11 U.S.C. §101(5), namely the invoice date, which was subsequent to date of the filing of the involuntary petition. This court concludes that as of the date of the involuntary bankruptcy filing, AAA was not an eligible creditor since it did not have a claim under 11 U.S.C. §101(5).

*PRT*

Dr. Reyes alleges that at the time of the bankruptcy petition he owed Puerto Rico Telephone ("PRT) $36.23 account number 787-796-1523 and that the invoice/service date was November 24, 2006. He also alleges that he owed PRT the amount of $38.77 for account number 796-5593-634 and that the invoice/service date was November 22, 2006 (Docket No. 331, Exhibit B-64). Dr. Reyes submitted to the court various documents from PRT. Amongst the documents submitted is a letter dated May 6, 2009, from PRT addressed to attorney Eldia Díaz Olmo, enclosing certified copies of invoices and payments regarding two (2) account numbers (#796-1523-374 and #796-5593-634) of which Dr. Reyes is the client in both accounts (Docket No. 345, Exhibit PRTC). The court notes that the documents submitted by the Involuntary Debtor were certified print-outs of history transaction records and the invoices report, not copies of the actual invoices. The transaction record for account #796-5593-634 reflects a credit balance of -$2.05 as of 11/22/06 (Docket No. 345, Exhibit PRTC, pg.

12). The invoices report for this account, provides the following information; Date Billed: 11/22/06; Closing date: 12/22/06; Mail Date: 11/27/06 (Docket No. 345, Exhibit PRTC, pg. 13). There is another history transaction record for this account which reflects a balance of $38.77 as of 11/24/06, and a $0.00 balance as of 12/08/06 (Docket No. 345, Exhibit PRTC, pg. 16). The history transaction record for account #796-1523-374 reflects a balance of $36.23 as of 11/24/06 and a $0.00 balance on 12/08/06 (Docket No. 345, Exhibit PRTC, pg. 8). The invoice report provided by the Involuntary Debtor for this account, has the following information: Date Billed: 11/22/06; Closing Date: 12/22/06; Mail Date: 11/27/06 (Docket No. 345, Exhibit PRTC, pg. 6). The history transaction report for this account reflects a balance of $36.23 as of 11/24/06 and a $0.00 balance as of 12/08/06 (Docket No. 345, Exhibit PRTC, pg. 8). The court notes that the history transaction records have numbered type numbers corresponding to the different balances (type 20, type 5050, type 900). The parties failed to submit to the court the legend corresponding to these types of transactions which is necessary to determine the invoice date and the payment due date. This court finds that Banco Popular has the burden of proving that PRT is not a valid creditor and it has not met their burden on this particular creditor, despite the fact that discovery was conducted and documentation was provided by PRT. Thus, this court concludes that PRT is an eligible creditor.

*Cingular*

Dr. Reyes alleges that at the time of the bankruptcy petition, he had a balance of $113 with Cingular (Docket No. 331, Exhibit Expert Witness Report, pg. 11). Dr. Reyes submitted to the court a one page invoice from Cingular Wireless ("Cingular") which reflects that the invoice is for the period of November 8, 2006 to December 7, 2006) and the amount owed is $112.79 which must be paid by December 30, 2006. (Docket No. 345, Exhibit Cingular Wireless). The face of this invoice is stamped with the words "PAID" and the date 12/21/06 is handwritten on the same. Banco Popular argues that this claim must be excluded for the same reasons already discussed as to the AEE, AAA and PRT claims and also because it is a contingent claim protected by 11 U.S.C. §366. This court finds that Dr. Reyes' Cingular invoice discloses a post-petition payment due date of 12/30/06. The invoice date is not disclosed on this invoice. However, this court infers that the invoice date should be at the end of the invoice period which ends on December 7, 2006. Moreover, Dr. Reyes paid for

56

this Cingular invoice post-petition (on 12/21/06). This court finds that the same reasoning applies to the Cingular claim as to the AEE and AAA claims. Thus, this court finds that Cingular's right to payment for this particular claim arose on the date that Cingular had a right to payment pursuant to 11 U.S.C. §101(5), namely the invoice date, or in this case at the end of the invoice period, which was subsequent to date of the filing of the involuntary petition. Thus, this court finds that as of the date of the involuntary bankruptcy filing, Cingular was not an eligible creditor since it did not have a claim under 11 U.S.C. §101(5).

**Miami Dade County (#9)**

Dr. Reyes alleges that at the time of the bankruptcy petition, Miami Dade County is an eligible creditor because he owed $7,366.27 in property taxes and the invoice/service date was November 30, 2006 (Docket No. 331, Exhibit Expert Witness Report, pgs. 11, Exhibit B-64). Dr. Reyes submitted to the court a letter from Miami Dade County addressed to attorney Eldia Díaz Olmo regarding the payment information requested in the subpoena. The letter disclosed that Miami Dade County received check #7045 in the amount of $7,366.27 from Dr. Reyes on December 4, 2006 (Docket No. 345, Exhibit Miami Apt. Taxes). The letter is accompanied by a copy of the tax notice (invoice) for real estate property taxes which discloses that if the  property taxes are paid by November 30, 2006 the amount to be paid is $7,366.27; if the property taxes are paid by December 31, 2006 the amount to be paid is $7,443.00;  if the property taxes are paid by January 31, 2007 the amount to be paid is $7,519.74; if the property taxes are paid by February 28, 2007 the amount to be paid is $7,596.47; and if the property taxes are paid by March 31, 2007 the amount to be paid is $7,673.20. Banco Popular filed a copy of check #7045 which is dated November 13, 2006 and is paid to the order of Miami-Dade Tax Collector (Docket No. 372, Exhibit 6-Miami Dade Check). Banco Popular argues that this claim must be excluded based upon the following; (i) Miami Dade County was paid in full before the involuntary petition was filed and nothing was owed as of the date of the filing of the bankruptcy petition; (ii) as of November 22, 2006 Miami Dade County did not have a "right to payment" because the payment of *ad valorem taxes* in Florida is due on March 31st of next year, but Section 197.62 of the Florida Statutes provides certain discounts for early payment; and (iii) under Florida Law property taxes are secured claims which must be excluded under Section 303(b) (Docket Nos. 372, pg. 22 &

394, Exhibit A, pgs. 4-5). Dr. Reyes argues Miami Dade County is an eligible creditor because as of the date of the bankruptcy filing it had an outstanding unpaid tax claim since it received the check on December 4, 2006 (Docket No. 388, pg. 9).

Fla. Stat. §192.042 provides in pertinent part;

"All property shall be assessed according to its just value as follows:

(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. 'Substantially completed' shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed." Fla. Stat. §192.042

Fla. Stat. §192.053 provides;

"A lien for taxes, penalties, and interest shall attach to any property upon which a lien is imposed by law on the date of assessment and shall continue full force and effect until discharged by payment as provided in chapter 197 or until barred under chapter 95." Fla. Stat. §192.053

Fla. Stat. §197.122(1) provides in pertinent part;

"All taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year the taxes were levied until discharged by payment or until barred under chapter 95." Fla. Stat. §197.122 (1).

Fla. Stat. §197.162 provides in pertinent part;

"Tax discount payment periods. (1) For all taxes assessed on the county tax rolls and collected by the county tax collector, discounts for payments made before delinquency shall be at the rate of 4 percent in the month of November or at any time within 30 days after the sending of the original tax notice; 3 percent in the following month of December; 2 percent in the following month of January; 1 percent in the following month of February; and zero percent in the following month of March or within 30 days before the date of delinquency if the date of delinquency is after April 1." Fla. Stat. §197.162.

Fla. Stat. §197.333 provides that;

"[a]ll taxes shall be due and payable on November 1of each year or as soon thereafter as the certified tax roll is received by the tax collector. Taxes shall become delinquent on April 1 following the year in which they are assessed or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later. If the delinquency date for ad valorem taxes is later than April 1 of the year following the year in which taxes are assessed, all dates or time periods specified in this chapter relative to the collection of, or administrative procedures regarding, delinquent taxes shall be extended a like number of days." Fla. Sta. §197.333

Under the Florida Statutes, the property taxes for any given year are assessed on January 1st

58

of that year and become due and payable on November 1st of that year pursuant to Fla. Stat. §§192.042, 197.333. See United States v. Falcone, 2008 U.S. Dist. Lexis 108774, at *5-6 (M.D. Fla. 2008)("Florida county tax collectors are responsible for the collection of real property taxes. Fla. Stat. §197.332.The amount of taxes owed by a property owner becomes due on November 1st of the year the taxes are assessed. Fla. Stat. §197.333. Local county governments are given liens on real property against which any taxes have been assessed, and those liens shall continue in full force from January 1 of the year the taxes were levied until discharged by payment."). However, the taxpayer has until March 31st of the following year to satisfy said payment under Fla. Sta. §197.162 before becoming delinquent on such debt under Fla. Stat. §197.162. In the instant case, the property taxes for the calendar year 2006 were assessed as of January 1st 2006 and are due and payable on November 1st 2006. This court finds that the real property tax claim arose as of January 1st 2006, but did not become due and payable until November 1st 2006. Thus, as of the date of the bankruptcy petition, the Miami Dade County Tax Collector had an outstanding pre-petition claim. See In re Moltech Power Sys., 296 B.R. 63 (Bankr. N.D. Fla. 2003). Moreover, despite the fact that the check is dated 11/13/06, the same was not received by the Miami Dade Tax collector until December 4, 2006, thus the property taxes were not paid pre-petition. The court notes that there is no information provided as to the dates when this particular check was mailed or when it was cashed. Thus, this court concludes that Miami Dade County is an eligible creditor as of the date of the filing of the bankruptcy petition.

**COS Insurance (#10)**

Dr. Reyes alleges that at the time of the bankruptcy petition, COS Insurance Agency, Inc. ("COS Insurance") is an eligible creditor because he owed $3,353 and the invoice/service date was November 27, 2006 (Docket No. 331, Exhibit B-64). Dr. Reyes did not submit any documentary evidence to substantiate this claim. However, Banco Popular included copy of check #2649 dated December 13, 2005 and payable to COS Insurance Agency in the amount of $12,015.00 (Docket No. 372, Exhibit 7-COS Insurance Check). The court notes that the information that appears on this check regarding the holder of the account from where this check was drawn is Cosmetic and Hair Surgery Center, not Dr. Reyes. In addition, Banco Popular alleges that pursuant to the documents produced

by COS Insurance, Dr. Reyes had two insurance policies, both with effective coverage from January 1, 2006 to December 31, 2006 and that both policies were paid in full on December 13, 2005 (Docket No. 372, pg. 22). The court notes that copies of these insurance policies and/or their invoices were not submitted to the court by Banco Popular or Dr. Reyes. Banco Popular alleges that it "...submitted all of the evidence produced by COS Insurance in response to a subpoena. The documents produced show that Dr. Reyes had two policies with effective coverage from January 1, 2006 to December 31, 2006 and that they were paid on December 13, 2005, with Dr. Reyes' check number 2649 in the total amount of $12,015.00. See Exhibit 7 to the Opposition, Docket No. 372." (Docket No. 394, Exhibit A, pg. 6). The Involuntary Debtor argues that, "...notwithstanding the fact that Banco Popular acknowledges receiving the purported evidence to that effect, the fact is that it offers no evidence whatsoever to attempt to prove that the cited check covered the outstanding balance cited by Rafael Rosario, Esq., CVA." (Docket No. 388, pg. 9). This court finds that Banco Popular has the burden of proving that COS Insurance is not a valid creditor and it has not met their burden on this particular creditor, despite the fact that discovery was conducted and documentation regarding the insurance policies was provided by COS Insurance due to a subpoena. Thus, this court concludes that COS Insurance is an eligible creditor.

**Brickell Bay HOA (#12) & Dorado Beach HOA (#18)**

Dr. Reyes alleges that at the time of the bankruptcy petition, Brickell Bay Club Condominium Association, Inc. ("Brickell Bay HOA") is an eligible creditor because he owed $836.82 and the invoice/service date was November 20, 2006. Dr. Reyes also alleges that Dorado Beach Ho. Assoc. ("Dorado Beach HOA") is a creditor with an outstanding claim in the amount of $837 and that the monthly payments were in the amount of $493.63. (Docket No. 331, Exhibit Expert Witness Report, pgs. 11& 13). Dr. Reyes submitted to the court the documentation produced by Brickell Bay HOA in response to Banco Popular's subpoena which includes a payment history report for unit #1515 from January 12, 2005 to February 1, 2007 (Docket No. 345, Exhibit Miami Apt.). Dr. Reyes did not submit any evidence regarding the Dorado Beach HOA claim. The court also notes that Banco Popular did not file a copy of any subpoenas issued to Dorado Beach HOA claim. Brickell Bay HOA's payment history reflects that as of 11/01/06 Dr. Reyes owed $1623.07 ($1129.44 in overdue

payments and $493.63 in current charges) and on 11/07/06 a check was received in the amount of $861.25, resulting in a balance of $761.82. Additional charges were applied on 11/15/06 in the amount of $268.19 and on 11/20/06 (late fee charge) in the amount of $75.00 resulting in a balance of $1105.01 as of 11/20/06. On 11/27/06 a payment of $268.19 was received resulting in a balance of $836.82.

Banco Popular argues that Brickell Bay HOA should be excluded pursuant to 11 U.S.C. §§547 and 549 because it received a preferential payment on 11/07/06 in the amount of $861.25 and voidable post-petition transfers. Dr. Reyes argues the following; "...not only are the allegations pertaining to purported preferential payments unsubstantiated, but they are also proven incorrect on account of the determination of solvency at the time of the filing of the involuntary petition on November 22, 2006, made by Rafael Rosario, Esq., CVA, expert witness for Reyes Colón, in his report attached to Reyes Colón's motion for summary judgment (Dkt. #331). Sections 547 and 549 would not be applicable in this case, based on Mr. Rosario's expert witness analysis, since no unsecured creditors were adversely affected, nor would they had been adversely affected, on accounts of payments made by a solvent debtor to *bona fide* debts" (Docket No. 388, pg. 11). Banco Popular argues that Dorado Beach HOA should be excluded because no evidence was produced by the Involuntary Debtor and thus, this claim must be considered subject to a *bona fide* dispute as to liability (Docket No. 372, pg. 33). Dr. Reyes argues that Banco Popular has had nearly five years to obtain this information via discovery, given that this creditor was in the December 28, 2006 list of creditors (Docket No. 388, pg. 15).

This court finds that as of 11/22/2006, Dr. Reyes had a pre-petition debt of $1,105.01and that he subsequently made post-petition transfers (payments) during the gap period which resulted in a credit balance or overpayment of $719.07 as of 01/03/07. Thus, Brickell Bay HOA is an excluded creditor pursuant to 11 U.S.C. §303(b) and §549(a) and (b).  As to the Dorado Beach HOA claim, the court finds that no supporting documentation to evidence the claim was filed by either party. This court finds that Banco Popular has the burden of proving that Dorado Beach HOA is not a valid creditor and it has not met their burden on this particular creditor, despite the fact that it had ample time to conduct discovery. Thus, this court concludes that Dorado Beach HOA is an eligible creditor.

**Iris Eileen Tañon Correa (#19) & Iguina Oharriz Law Firm (#13)**

Dr. Reyes alleges that at the time of the bankruptcy petition, Mrs. Iris Eileen Tañón Correa is an eligible creditor because he owed her the monthly alimony payment in the amount of $2,250 (Docket No. 331, Exhibit Expert Witness Report, pgs. 11 &13). Banco Popular argues that Mrs. Tañon should be excluded as a creditor based upon the following: (i) Mrs. Tañón, the ex-wife of Dr. Reyes, pursuant to the divorce stipulations was entitled to receive alimony for only three (3) years pursuant to paragraph F of a state court Judgment that was entered on January 19, 2001; (ii) the child support obligation to Dr. Reyes' minor son should be excluded under 11 U.S.C. §303(b)(2) because Dr. Reyes' son is an "insider" under 11 U.S.C. §101(31) (Docket No. 372, pgs. 33-34). Dr. Reyes presents the following arguments; (i) paragraph F of the divorce stipulations provides, "...that in addition to all of the pecuniary commitments assumed by the male petitioner, he will pay the female petitioner One Thousand Five Hundred Dollars ($1,500.00) a month for three (3) years and the female petitioner agrees not to request the review of child support during this period," and thus, "the domestic support obligation contemplated a period of time in excess of the three (3) year term proposed by Banco Popular;" and (ii) Banco Popular has had nearly five years to obtain and verify this information (Docket No. 388, pgs. 15-16). Dr. Reyes did not submit any documentary evidence to sustain that Mrs. Tañon is an eligible creditor.

Paragraph F of the agreements included in the Divorce Petition provides; "[i]n addition to all of the pecuniary commitments assumed by the male petitioner, he will pay the female petitioner One Thousand Five Hundred Dollars ($1,500.00) a month for three (3) years and the female petitioner agrees not to request the review of the child support during this period." (Docket No. 379,  Exhibit 3- Divorce Petition). After reading the Divorce Petition, in its entirety this court concludes that Mrs. Tañon was entitled to receive monthly alimony payments of $1,500.00 for the three (3) years subsequent to the state court Judgment that was rendered in this case on January 19, 2001. This court finds that as of the petition date, the three (3) years have lapsed and thus, Mrs. Tañón is not entitled to receive subsequent alimony payments. Dr. Reyes failed to rebut Banco Popular's documentary evidence by presenting documentary evidence which would establish otherwise. Dr. Reyes' does not include his minor son as a creditor for the child support payments. Dr. Reyes' minor son is an

excluded creditor because he is an "insider" pursuant to 11 U.S.C. §303(b)(1) & (2) & 101(31)(A)(i). This court finds that Mrs. Tañón must be excluded as a creditor.

Dr. Reyes alleges that as of the petition date, the Iguina & Oharriz Law Firm is an eligible creditor because he owed the same $2,354 in legal fees and the invoice/service date was November 30, 2006 (Docket No. 331, Exhibit Expert Witness Report, pgs. 11 &13, Exhibit B-64). Dr. Reyes filed with the court copies of two (2) invoices sent via e-mail to attorney Eldia M. Díaz Olmo. The first invoice (number 13588) is dated November 9, 2006 for costs and professional services rendered until October 31, 2006 and is in the amount of $525.00 of which $75 is for current charges and $450.00 was applied to a previous balance. This invoice discloses that a payment in the amount of $2,000.00 for invoice numbers 12832 & 13270 was received on 10/13/2006 resulting in a credit balance of ($1,475.00). The second invoice (number 13847) is dated December 12, 2006, for costs and professional services rendered until November 30, 2006 and is in the amount of $2,354.03. The invoice does not reflect that the previous credit balance was offset with the current charges (Docket No. 345, Exhibit Iguina Law Offices).

Banco Popular argues that the Iguina & Oharriz Law Firm is not an eligible creditor due to the following reasons; (i) invoice #13588 dated November 9, 2006 reflects that Dr. Reyes made an excess payment of $1,475.00 which resulted in a credit balance to his account; (ii) any future amount was a contingent claim as of the petition date; and (iii) attorney Iguina should be considered an "insider" under 11 U.S.C. §101(31) because; (1) attorney Iguina at the time of the filing of the involuntary petition, was representing Dr. Reyes in the state court action filed by Banco Popular; (2) "the professional relationship with Dr. Reyes compels the conclusion that the relationship was close enough at the time to gain an advantage;" and (3) "the evidence of Dr. Reyes' desire to treat his acting attorney differently from other general unsecured creditors is evident by the payment "on account" of $2,000.00 made on October 13, 2006, when the balance owed by him at the time was a mere $450." (Docket No. 372, pgs. 25-28).

The Involuntary Debtor argues that the Iguina & Oharriz Law Firm is an eligible creditor based upon the following; (i) invoice number 13847 dated December 12, 2006 has an outstanding claim of $2,354.00 as disclosed by Rafael Rosario, Esq., CVA; and (ii) the Iguina & Oharriz Law

Firm cannot be considered an "insider" because it has never represented Dr. Reyes in this involuntary proceeding, therefore the case law cited by Banco Popular is inapplicable in this case (Docket No. 372, pgs. 11-12).

This court finds that as of the date of the involuntary petition, the Iguina & Oharriz Law Firm did not have an outstanding claim, given that invoice #13847 was for legal services rendered until November 30, 2006 and the invoice date was December 12, 2006. This court concludes that the Iguina & Oharriz Law Firm's right to payment for this particular claim arose on the date that it had a right to payment pursuant to 11 U. S.C. §101(5), namely the invoice date, which was subsequent to date of the filing of the involuntary petition. Thus, this court finds that as of the date of the involuntary bankruptcy filing, the Iguina & Oharriz Law Firm was not an eligible creditor since it did not have a claim under 11 U.S.C. §101(5) at the date of the filing of the involuntary bankruptcy.

**Puerto Rico Treasury Department (Secretary of the Treasury) (#16)**

Dr. Reyes alleges that at the time of the bankruptcy petition, the Puerto Rico Treasury Department ("PR Treasury") is an eligible creditor because he owed $36,704 in income taxes for the year 2006(Docket No. 331, Exhibit Expert Witness Report, pg. 11). Dr. Reyes submitted to the court his 2006 individual income tax return which is stamped as received by the PR Treasury on April 12, 2007 and that it is a tax return that was not accompanied by a payment (Docket No. 331, Exhibits B-62 & B-63, Docket No. 345, Exhibit 2006 Tax Return). The individual tax return on line item #36 of part 4 indicated that the remaining tax balance due was paid via an electronic transfer through a certified program. Banco Popular argues that the PR Treasury should be excluded as an eligible creditor (qualified claim) based upon the following: (i) "[a]s was decided by this Court in the case of In re Ramírez Padua, case no. 04-01065, a tax is incurred when the tax accrues and becomes an obligation. In terms of income taxes, the tax accrues at the end of the tax year which is December 31st (13 L.P.R.A. §8441), but its payment is due the 15th of April of the following year (13 L.P.R.A. §8453);" and (ii) in this case the year 2006 income taxes accrued on December 31, 2006, thus as of November 22, 2006, Dr. Reyes had no debt towards the PR Treasury (Docket No. 372, pg. 32). Dr. Reyes argues that the PR Treasury is an eligible creditor based upon the following: "Reyes Colón already had generated income, as of November 22, 2006, that was subject of taxation, although it was

64

still not due for payment, which was on April 15, 2007, and it had also not completed its accrual, which finalized on December 31, 2006. Therefore, it was a contingent claim at the time of the filing of the involuntary petition." (Docket No. 388, pg. 14).

This court has in the past adopted the view that state tax law, in this case the Puerto Rico Internal Revenue Code of 1994, as amended (the "PR Code") must be employed to decide when a tax claim arises, meaning when the tax is incurred. See In re Ramirez Padua (Case No. 04-01065, Docket No. 129); In re FR & S Corp., 2011 Bankr. Lexis 1307 (Bankr. D.P.R. 2011). This court in the case of In re Ramirez Padua was confronted with the issue of whether the PR Treasury's claim regarding a debtor's income tax liability was a pre-petition priority claim under 11 U.S.C. §507(a)(8) or an administrative expense under 11 U.S.C. §503(b). The analysis applied in the case of In re Ramírez Padua and In re FR&S Corp. is applicable in the instant case since the core issue is the same; namely when are the state taxes incurred. This court in the case of In re Ramirez Padua held that, "[a] tax is incurred when it accrues, generally the tax year ending December 31st (13 L.P.R.A. §8441), but its payment is due the 15th of April of the following year (13 L.P.R.A. §8453)[3]." In the instance case, the involuntary petition was filed on November 22, 2006, prior to the close of the calendar year, thus the tax for taxable year 2006 accrued on December 31, 2006, subsequent to the bankruptcy petition date. The court finds that the PR Treasury's right to payment or claim arose in the case of an individual debtor, on the last day of its taxable year, that is, December 31, 2006, thus the PR Treasury is not an eligible creditor under 11 U.S.C. §303(b)(1) or (2) since it did not have a claim pursuant to 11 U.S.C. §101(5).

**Galería del Parque (Mr. José Costa) (#20)**

Dr. Reyes alleges that as of the petition date, Galería del Parque, is an eligible creditor because he owed the same $1,015.05 in framing services and the invoice/service date was October 6, 2006 (Docket No. 331, Exhibit Expert Witness Report, pgs. 11 &13, Exhibit B-64). Banco Popular argues that Galería del Parque is not an eligible creditor due to the following reasons; (i) according to the

---

[3] The court notes that the section that provides for the payment of tax under the 1994 Puerto Rico Code is 13 L.P.R.A. §8456, not 13 L.P.R.A. §8453.

deposition of Mr. José Costa, sole owner of Galería del Parque, Dr. Reyes did not owe him anything as of November 22, 2006; (ii) Mr. José Costa called Dr. Reyes in December 2006 and the latter picked up the framed artwork on December 30, 2006 and paid for it in cash on that same date; (iii) Mr. José Costa (Galería del Parque) had a "right to payment" at the end of December 2006, when the work was performed and the right to payment arose; (iv) "Mr. Costa even clarified that when dealing with framing work, his clients don't owe him anything. To the contrary it is him who owes the client because the value of the works of art is much more than the $40 or $50 cost of the frames;" and (v) Mr. Costa produced his 2006 accounts receivable ledger, in which he listed all the names of clients that owed him money at any time during the year 2006 and Dr. Reyes name was not in the ledger (Docket No, 372, pgs, 34-35). Dr. Reyes argues that Galería del Parque is an eligible creditor due to the following: (i) receipt #8661 is dated October 6, 2006, thus, "[a]ny interpretation of other due date of the same by the deponent Mr. Costa, who is not an attorney of law, does not negate the fact that the concerned receipt #8661 is dated October 6, 2006, when Reyes Colón requested the rela[ted] service, prior to the filing of the involuntary petition" (Docket No. 388, pg. 16).

The invoice in question is number 8662, which discloses Dr. Edgar Reyes as the client, and it is dated October 6, 2006 for a total amount owed of $1,015.05. The invoice has an observations portion in which the following is handwritten: cash $1,015.05, paid 12-30-06 and Mr. José Costa's initials (Docket No. 372, Exhibit 9-Part II Deposition of José Costa). Mr. Costa during the deposition stated that the date of October 6, 2006 is the date in which the client brought the artwork to the gallery to be framed and December 30, 2006 is the date when the client picked up the artwork and paid for the same in cash (Docket No. 372, Exhibit 9-Part II Deposition of José Costa, pgs. 24, 28 & 33 of Deposition). Mr. Costa explained in the deposition that when his clients request framing services, "[h]e doesn't owe me anything until he takes them. Because all of those pieces of art are very expensive, and my frame is nothing to compare to– to what are they worth, you know. And the day when he takes the pieces of art, that's the day when he doesn't– he pays me and he doesn't owe me nothing" (Docket No. 372, Exhibit 9-Part II Deposition of José Costa, pgs. 34-35 of Deposition). Mr. Costa did not specify during the deposition, the date when he completed the framing work for Dr. Reyes' artworks or the date he communicated with Dr. Reyes to inform him that the framing work

was completed. The court finds from Mr. Costa's deposition that October 6, 2006 is the date in which Dr. Reyes brought the pieces of art to be framed, not the date that the work was completed. According to Mr. Costa's business practices, December 30, 2006, the payment date, is the date in which Dr. Reyes does not owe him anything, given that the values of the art exceed the value of the frames and the framing services. Thus, according to Mr. Costa's business practices, his right to payment is the date the clients pay for the frames and framing service. Dr. Reyes did not present any evidence to the contrary (such as testimony that Mr. Costa called him prior to the petition date because the framing work was completed). Thus, this court concludes that as of the petition date, Galería del Parque is not an eligible creditor because his claim arose on a subsequent date.

**Liberty Cable (#21) & Sun Com (#22)**

Dr. Reyes also alleges that as of the petition date he owed Liberty Cable $107 and Sun Com $155 (Docket No. 331, Exhibit Expert Witness Report, pg. 11). Banco Popular argues that Liberty Cable and Sun Com must be excluded because Dr. Reyes has failed to produce evidence regarding these claims (Docket No. 372, pg. 35) Dr. Reyes argues that, these creditors were included in the December 28, 2006 (Docket No. 10) list of creditors and that Banco Popular has had five years to conduct discovery regarding these claims (Docket No. 388, pgs. 16-17). This court finds that Banco Popular has the burden of proving that Liberty Cable and Sun Com are not eligible creditors and it has not met its burden on these two (2) creditors, despite the fact that it had ample time to conduct discovery. Thus, this court concludes that Liberty Cable and Sun Com are eligible creditors.

*Special Circumstances Exception to the Three Petitioning Creditor Requirement*

As of the date of this Opinion and Order, there are only two (2) petitioning creditors. This court finds herein that Dr. Reyes, at the time of the involuntary bankruptcy petition, had fifteen (15) eligible creditors which held qualified claims as of the petition date, (Banco Popular and creditors no. 1, 2, 3, 4, 5, 6, 9, 10, 11, 14, 15,18, 21 & 22), thus pursuant to 11 U.S.C. §303(b)(1) and (2), three (3) petitioning creditors are necessary for this involuntary bankruptcy petition to avoid being dismissed. However, Banco Popular alleges that the judicially created "special circumstances exception" doctrine is applicable in the instance case and thus, two (2) petitioning creditors may initiate (have standing

to file) an involuntary bankruptcy petition.

The first issue regarding the special circumstances exception that must be addressed is whether Banco Popular waived the "special circumstances exception" defense.  The Involuntary Debtor argues that Banco Popular waived the "special circumstances exception" defense based upon the following; (i) the untimely filing of "special circumstances" allegations by Banco Popular through Fed. R. Bankr. P. 9023 which incorporate Fed. R. Civ. P. 59(e); and (ii) the Involuntary Debtor's opposition to Banco Popular's Fed. R. Civ. P. 59(e) motion (Docket No. 37) is pending the entry of a ruling on the merits by this court, since the issue was  not addressed by the Bankruptcy Appellate Panel upon remanding the appeal for the processing of notices to creditors by Banco Popular. Regarding the issue as to whether Banco Popular waived the "special circumstances exception" defense the latter argues that; (i) this court has already decided on multiple occasions that Banco Popular can discover evidence pursuant to the "special circumstances exception" (Docket Nos. 77, 79, 156, 234, 240 & 241); and (ii) on March 16, 2009, the parties filed a joint discovery plan and the Involuntary Debtor agreed to perform discovery on both the number of creditors and the "special circumstances" issue (Docket No. 80), thus the Involuntary Debtor is precluded from rearguing that Banco Popular waived the "special circumstances exception."

Banco Popular first raised the "special circumstances exception" defense on April 9, 2007, in a motion requesting reconsideration of dismissal which was subsequently denied on July 18, 2007. The First Circuit BAP, in its Opinion and Order determined that since the Panel had reversed the decision dismissing the case without notice to creditors and opportunity for a hearing, it was unnecessary to reach the issue of reconsideration (Docket No. 80, pg. 16). This court understands that the motion for reconsideration is moot, given the BAP's decision to reverse the decision dismissing the instant case, thus this motion for reconsideration is not pending before this court. This court subsequent to the case being remanded determined that Banco Popular had made a timely request for discovery prior to hearing on the alleged Involuntary Debtor's request for dismissal of the involuntary petition and the court in its discretion, allowed Banco Popular the opportunity to expeditiously conduct discovery (Docket No. 77).  The court at a later status hearing ruled that the scope of discovery would not be limited to the issue dealing with the matter of creditors (Docket No. 79).

Moreover, a joint discovery plan was filed wherein the parties submitted their discovery plan in which they stated; "[t]he parties will conduct discovery concerning the following controversies: the number of creditors that the debtor had as of the date of the filing of the involuntary petition and, if special circumstances exist for the Court to enter the order for relief against debtor even if debtor demonstrated that he has more than twelve creditors and no other creditor joins the petition" (Docket No. 80). The court also denied the motion to quash or limit the scope of subpoena *duces tecum* filed by Dr. Francisco Quintero, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., and Inmobiliaria Madrid CXA Corp. (Docket No. 156). The subpoena *duces tecum* of Dr. Francisco Quintero, Inmobiliaria Asturias CXA Corp., Inmobiliaria Canarias CXA Corp., and Inmobiliaria Madrid CXA Corp. were regarding the "special circumstances exception" issue. This court on May 24, 2010 ordered that; "(1)-Parties granted sixty (60) days to conclude discovery only as to whether or not sufficient creditors have joined the petition and to whether "special circumstances" doctrine applies to the facts in this case. 2- This Court finds that the bankruptcy Court has not decided whether the special circumstances doctrine applies in this case, and consequently, no such order is on appeal. 3- Court further finds that a decision on whether or not the doctrine applies is fact intensive, and declines, at this juncture, to make such a determination" (Docket No. 234). Moreover, on October 20, 2010, the parties filed a joint second amended discovery plan and for extension to complete discovery informing of various depositions of Félix Román Dávila, Félix Román Jr., Criselo J. Rivera Muñoz, Dr. Francisco Quintero Peña, attorney Erick Reyes Colón, attorney Carlos Iguina and Dr. Reyes that will be conducted by Banco Popular that are related to the "special circumstances exception" issue (Docket No. 265). On November 1, 2010, the court granted the second amended discovery plan and request for extension to complete discovery (Docket No. 266). Thus, this court finds that Banco Popular has not waived the "special circumstances exception" issue, given that both parties relatively early in the case agreed that there was a controversy regarding this specific issue and that the same was discoverable.

Banco Popular alleges that the "special circumstances exception" applies based on the following facts: (i) "[a]s of this date, Dr. Edgar Reyes...owes BPPR the amount of $2,782,854.47, including principal and interest;" (ii) [a]ccording to the financial information provided by Debtor,

from the year 2002 up to July 31st, 2005, his assets have been drastically reduced and debts have substantially increased;" (iii)[t]he balance sheet presented by Debtor to BPPR as representing his financial condition as of June 30, 2002, reflected a capital of $9,399,850.00 [Exhibit I];"(iv) "[l]ess than three (3) years later, Debtor submitted a second 'Balance Sheet', as of July 31, 2005, showing a reduced capital allegedly of $1,581,550.00 [Exhibit 2]. Nevertheless, as of that date Debtor already owed BPPR over $2,000,000.00 which Debtor omitted to include as part of his liabilities;" (v) "[a] comparison of both balance sheets show that the reduction of capital is due largely to the following facts: (a) [t]he value of the 'Marketable Securities' was reduced from $1,725,000.00 to only $49,000;" (b) [t]he Debtor no longer shows the $1,300,000.00 investments in N.Y. MedGroup and IBT-Technologies;" (c) "[e]xclusion of Isla Verde Apartment which had a market value of $720,000.00;" (d) "[s]ale of office building in Bayamón, PR, (Arturo Cadilla) with a market value of $450,000.00 to an entity by the name of 'Inmobiliaria Canarias CXA Corp.;" (e) "Debtor no longer shows the office furniture and equipment which had a net value of $235,000.00;" (f) "[e]xclusion of Office in Condado, PR with a market value of $200,000.00;" (g) "[e]xclusion of property located at Urb. Santa Cruz, Bayamón, PR with a market value of $150,000.00;" (vi) "...only two (2) new assets are added to the 2005 balance sheet, i.e. a Ferrari car and a new 'residential apartment' which upon information and belief is located at Brickell Ave., Miami, Florida, the liabilities are increased by $3,349,000.00 [See: Comparison, Exhibit 3]" (Docket No. 32, pgs. 3-4); (vii) the incorporator of Inmobiliaria Canarias CXA Corp., is the Involuntary Debtor's accountant, Mr. Félix N. Román and the resident agent is Dr. Reyes' brother Mr. Eric Y. Reyes Colón; and (ix) "[t]his potentially fraudulent conveyance to an entity with direct ties to Debtor's brother and accountant, is precisely the type of 'special circumstances' which, as stated by some courts justify departure from the three creditor requirement" (Docket No. 33, pg. 2).

The "special circumstances exception" to the creditor numerosity requirement under Section 303(b) was initially created for single creditor cases, but has been applied in cases in which the involuntary debtor had more than eleven (11) eligible creditors and only two (2) petitioning creditors. See In re Moss, 249 B.R. 411 (Bankr. N.D. Tex. 2000); Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.14[8](16th ed. 2011). Thus, under the "special circumstances exception"

the three (3) creditor requirement under Section 303(b) is not applicable in the event of trick, artifice, scam, or fraud. See In re Moss, 249 B.R. at 424; In re Norris Bros. Lumber Company, Inc., 133 B.R. 599, 609 (Bankr. N.D. Tex. 1991). In the instant case, the petitioning creditors have the burden of proving that in this case "special circumstances" exist based upon the alleged fraudulent transfers made by the Involuntary Debtor to various corporations prior to the filing of the bankruptcy petition.

***Banco Popular Bona Fide Dispute Issue under 11 U.S.C. §303(h)***

The Involuntary Debtor alleges the following regarding his debts with Banco Popular and Popular Auto: (i) Dr. Reyes was current in all of his financial obligations with the exception of the debts subject to *bona fide* dispute owed to Banco Popular and its affiliate Popular Auto; (ii) "Banco Popular and its affiliate Popular Auto also knew, or had to know if they had acted with prudence and diligence, that since Reyes Colón was generally paying his *bona fide* debts as the same became due, as such, an order for relief could not be entered by the Bankruptcy Court under 11 U.S.C. §303(h), even assuming that they had the proper number of petitioning creditors at the inception of the case, which in fact they did not have;" (iii) courts consider four (4) factors to determine whether a debtor is generally paying its debts within the meaning of 11 U.S.C. §303; namely; (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs; and (iv) "the bank's debt is the subject of a *bona fide* dispute as to amount, precisely because the bank itself has not produced, to this date, in violation of applicable discovery rules, the relevant, specific evidence substantiating its purported claim, notwithstanding that the credit facilities documents expressly make reference to specific items that must be necessarily considered to determine the actual debt" (Docket No. 331, pgs. 11-13). Banco Popular argues that; (i) "...contrary to the statement by the expert witness, before the filing of the motion for summary judgment, Dr. Reyes never formally disputed the claim of Banco Popular in this proceeding; (ii) Dr. Reyes admitted under oath the validity of the claim of Banco Popular in the amount of $2,300,000.00 on December 28, 2006 upon the filing of the Motion in Compliance with Order (Docket No. 10), thus Dr. Reyes is bound by his assertion of fact in a pleading which is considered a judicial admission; (iii) the amount claimed by Banco Popular in the amended complaint was $2,297,532.75 of principal plus interest and legal fees for a total of $2,600,805.53; (iv) the case

is not active as to Dr. Reyes because it is stayed pursuant to 11 U.S.C. §362; and (v) Banco Popular has submitted to the state court all of the evidence and has obtained a state court judgment against the principal debtors (Docket No. 394).

Section 303(h) provides;

> "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only–
> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; or
> (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession." 11 U.S.C. §303(h).

The term "bona fide dispute as to liability or amount" appears in 11 U.S.C. §303(b)(1) and (h)(1), but each subsection refers to different situations. Section 303)b)(1) addresses the numbers of creditors needed to file an involuntary petition and Section 303(h)(1) refers to the creditors' whose debts the involuntary debtor is not paying. However, the same test applies to determine whether a particular debt is subject to a *bona fide* dispute under Section 303(b) and Section 303(h). See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.11 & ¶303.31(16th ed. 2011). Because the Bankruptcy Code does not define the term, "bona fide dispute" much litigation and disagreement as to its meaning has ensued. Id at §303.11[1]. The Bankruptcy Appellate Panel for the First Circuit in Metz v. Dilley (In re Dilley), 339 B.R. 1 (B.A.P. 1st Cir. 2006) adopted the objective approach to determine whether a particular claim is subject to a *bona fide* dispute providing that;

> "Under the objective standard, 'if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.'" In re Lough, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986). The bankruptcy court is not to resolve the merits of any genuine issues of fact or law; its inquiry is to determine if such an issue exists. Id. 'This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists.' In re Biogenetic Technologies, Inc. 248 B.R. 852, 857 (Bankr. M.D. Fla. 1999). Because the standard is an objective one, a debtor's subjective intent is not relevant and thus 'mere denial of the claim's validity or amount is not sufficient...." In re Narragansett Clothing Co., 143 B.R. 582, 583 (Bankr. D. R.I. 1992). Instead a debtor must demonstrate that there are substantial factual or legal questions that bear upon his liability. Busick, 831 F. 2d at 750. Courts have recognized that a bona fide dispute exists when the debtor has not admitted liability to the petitioning

72

creditors nor have the creditors proven the debtor's liability. In re Reid, 773 F. 2d 945, 947 (7th Cir. 1985). Efron, 226 B.R. at 312." In re Dilley, 339 B.R. at 6.

Litigation prior to the filing of the involuntary petition between an involuntary debtor and a petitioning should be reviewed, but is not dispositive of a *bona fide* dispute. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.11[1](16th ed. 2011). The petitioning creditors have the burden to establish a *prima facie* case by the preponderance of the evidence standard that there is no *bona fide* dispute as to liability and amount. See In re Dilley, 339 B.R. at 7. After the petitioning creditors have established that there is no *prima facie* dispute, then the burden shifts to the involuntary debtor to establish the *bona fide* dispute. See Id. at 6. The involuntary debtor's inclusion pursuant to Fed. R. Bankr. P. 1003(b) of a petitioning creditor's claim is not sufficient to sustain the petitioning creditor's burden of proof. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.11[4](16th ed. 2011)("Compliance with Bankruptcy Rule 1003 does not obviate the need for the petitioning creditor to demonstrate that its claim is neither contingent as to liability nor the subject of a bona fide dispute as to liability or amount"). The involuntary debtor's "subjective intent or belief as to the amount of the debt or value of services provided is insufficient proof. To resolve the issue, a court may, but is not required to, address the merits of the underlying dispute. The determination may well hinge on an assessment of the credibility of witnesses and other factual considerations." Id.

Under Section 303(b), *bona fide* disputes disqualify petitioning creditors from filing an involuntary bankruptcy petition and under Section 303(h) a debtor is subject to an involuntary filing if it is generally not paying its debts as they become due, with the exclusion of debts that are subject to a *bona fide* dispute as to liability or amount. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.11(16th ed. 2011). The court notes that the Involuntary Debtor has not raised this particular defense; namely whether Banco Popular's claim is subject to a *bona dispute* under Section 303(b) thus excluding Banco Popular from being a petitioning creditor.

Pursuant to 11 U.S.C. §303(h) the "generally not paying standard" excludes debts which are subject to *bona fide* disputes as to liability or amount. The "generally not paying standard" under Section 303(h) is not a balance sheet insolvency test or an equity insolvency test. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.31(16th ed. 2011). To determine whether the

"generally not paying standard" has or has not been satisfied it is necessary to employ a multifactor test which considers the number of creditors and the amount of the debts as of the date of the filing of the involuntary bankruptcy petition. See Id. The petitioning creditors have the burden of proving that the involuntary debtor is "generally not paying" its debts as they become due. The burden shifts to the involuntary debtor after the petitioning creditors have met the burden. The involuntary debtor then has the burden to prove that the debts in controversy are subject to a *bona fide* dispute as to liability or amount. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶303.31[5](16th ed. 2011).

In the instant case, the Involuntary Debtor did not raise the defense that Banco Popular and Popular Auto were barred from being petitioning creditors because their debts were subject to a *bona fide* dispute as to liability or amount pursuant to 11 U.S.C. §303(b)(1) and (2). The court finds that the original list of creditors (Docket No. 10) submitted by the Involuntary Debtor pursuant to Fed. R. Bankr. P. 1003(b) on December 28, 2006 included both Banco Popular and Popular Auto as creditors in the amounts of $2,300,000 and $161,000; respectively. Notwithstanding, the inclusion of these two claims in the creditor list by the Involuntary Debtor does not establish the petitioning creditor's burden of proof regarding the number of petitioning creditors not subject to a *bona fide* dispute as to liability or amount.

The court finds that as of the petition date, Popular's auto claim in the amount of $164,204.95, was not subject to a *bona fide* dispute, since there was a final state court judgment which was rendered on August 10, 2006, and notified to the parties on August 15, 2006 prior to the filing of the bankruptcy petition by which the state court held that Grupo Toraya de Puerto Rico, Inc., Edgar Reyes Colón and the conjugal partnership comprised between Dr. Reyes and his wife, Carlos Cusnier Albrecht and the conjugal partnership comprised between Mr. Cusnier and his wife, had to pay jointly and severally ("solidariamente") Popular Auto the amount of $164,204.95 plus accruing interest at the actual legal interest rate in addition to $49,261.50 for attorneys' fees (Docket No. 9). This court notes that Carlos Cusnier Albrecht filed a Chapter 11 bankruptcy petition on December 21, 2006 in case No. 06-05221. On January 24, 2007, Mr. Cusnier as co-debtor included Popular Auto, Inc.'s unsecured claim in the amount of $164,204.95 in Schedule F (Creditors Holding Unsecured

NonPriority Claims). Mr. Cusnier also as co-debtor included in Schedule F Banco Popular's unsecured claim in the amount of $2,600,000 (Case No. 06-05221, Docket No. 14). Mr. Cusnier's confirmed Chapter 11 reorganization plan (the order confirming the plan was entered on April 8, 2008) provided that all general unsecured claims will be paid .05% of their allowed claim in one lump sum payment on the Effective Date (Case No. 06-05221, Docket Nos. 34, pg. 11 & 62).

The Involuntary Debtor argues that Banco Popular's unsecured claim must be excluded under Section §303(h)'s "generally not paying standard" since this particular debt was subject to a *bona fide* dispute as to liability or amount at the time the bankruptcy petition was filed. The Involuntary Debtor alleges that the *bona fide* dispute regarding this particular debt is with respect to the amounts owed because Banco Popular has failed to produce the relevant specific evidence necessary to substantiate its purported claim. However, Banco Popular filed copy of the state court Partial Summary Judgment rendered on March 10, 2011 and notified on March 24, 2011 (Docket Nos. 394 & 397). In said Partial Summary Judgment, the state court includes as part of the factual background of the state case the following pertinent facts; (i) the complaint was filed by Banco Popular on March 1, 2005; (ii) a table of the loan number, the principal amounts owed which correspond to the particular loan numbers the corresponding interest until February 8, 2005, the attorneys' fees and a column for the totals; (iii) on June 6, 2005, Reyes Colón, Grupo Toraya Puerto Rico, Inc., and Perfetto Group Corp. answered the complaint through attorney John M. Garcia Nokonechna; (iv) on March 10, 2006, attorney John M. García Nokonechna filed a motion of resignation as the legal representative of co-defendants Reyes Colón, Grupo Toraya Puerto Rico, Inc., and Perfetto Group Corp., which was granted by the state court on March 20, 2006; (v) on March 17, 2006, attorney Charles A. Cuprill-Hernández appeared for co-defendants Reyes Colón, Grupo Toraya Puerto Rico, Inc., and Perfetto Group Corp. Assuming their legal representation and requesting a term of thirty (30) days to formulate the pertinent allegations pursuant to law; (vi) on April 3, 2006, the state court accepted the appearance of attorney Cuprill-Hernández; (vii) after several procedural incidents, on March 18, 2008 a motion was filed informing the court, amongst other matters, that co-defendant Reyes- Colón was also protected by the U.S. Bankruptcy Act, since he was subject to the filing of an involuntary bankruptcy filed on November 22, 2006, in the U.S. Bankruptcy Court for the District of Puerto Rico; (viii) on April 26,

2008, notified on May 7, 2008, the state court issued a partial judgment decreeing the stay of proceedings in this case against Reyes-Colón; (ix) On November 18, 2010, the state court held a status conference with the following pertinent incidents; (a) "[i]n view of the continuation of the proceedings against co-defendant Reyes-Colón in the Bankruptcy Court, the partial stay against him remained in effect;" and (b) "[i]n view of the lack of allegations or appearance of co-defendants Toraya and Perfetto, the court granted the plaintiff a period of fifteen (15) days to file a motion for motion for summary judgment against them." (Docket No. 397, Appendix Certified Translation, pg. 4). Moreover, the state court in its Partial Summary Judgment noted the following; "[s]ince co-defendants Toraya and Perfetto have failed to defend themselves in this Court of the claims from plaintiff Banco Popular, the Court deems as proven the facts stated in the Complaint that said co-defendants indubitably failed to pay their obligations towards the plaintiff, which arise from public documents in the record, the facts remain uncontested, and its pertinent that summary judgment be issued granting the Amended Complaint, pursuant to the provisions of Rule 36 of Civil Procedure and the applicable substantive law." (Docket No. 397, Appendix Certified Translation, pg. 5). The state court in its Partial Summary Judgment concluded the following; "Co-defendants Toraya and Perfetto respectively failed to comply with their obligation to repay the loans granted by the plaintiff, and since there is no controversy with regard to their responsibility towards Banco Popular, this Court issues partial summary judgment granting the respective claims against co-defendants Toraya and Perfetto."(Docket No. 397, Appendix Certified Translation, pgs. 20-21). In view of the foregoing, this court finds that it stems from the state court Partial Summary Judgment, that co-defendants Grupo Toraya Puerto Rico, Inc., and Perfetto Group Corp. failed to defend themselves in the collection of monies action in state court to the extent that the state court had to deem proven the facts stated in the complaint. There were no factual or legal issues presented in the state case by Grupo Toraya Puerto Rico, Inc. and Perfetto Grupo Corp., regarding the liability or the amounts owed to Banco Popular under the different loans personally guaranteed by Dr. Reyes. Therefore, this court concludes that there is no *bona fide* dispute as to the amounts owed to Banco Popular by Dr. Reyes as guarantor of Grupo Toraya Puerto Rico, Inc. and Perfetto Group Corp.

At this juncture, this court is unable to determine whether the Involuntary Debtor at the time

of the bankruptcy petition was "generally not paying" his debts as they became due since Banco Popular responded partially to the motion for summary judgment, solely with respect to the issue as to the number of creditors (Docket Nos. 372 & 394). Banco Popular, as a petitioning creditor, must satisfy the burden of proving that the Involuntary Debtor was not satisfying its debts as they became due pursuant to 11 U.S.C. §303(h).

Since there are more than 12 creditors as of the date of the filing of the involuntary petition, this court must first determine whether the special circumstances exception existed at the time Banco Popular filed this involuntary bankruptcy petition. The three creditor statutory requirement in Section 303(b) may be subject to the special circumstances exception. This court finds merit to such judicially created exception to the statutory requirements when the petitioning creditor(s) establish(es) fraud, artifice or scam as Section 303(b) is not jurisdictional in nature. However, the court will only consider the special circumstances exception to consider the number of petitioning creditors under Section 303(b). The court declines to extend the special circumstances exception to the requirements in Section 303(h) as the court implicitly did in In re Moss, 249 B.R. at 424.

## Conclusion

In view of the foregoing, this court finds that the Involuntary Debtor at the date of the filing of the involuntary bankruptcy petition had fifteen (15) eligible creditors; namely; (#1) R&G Financial Corp.; (#2) Popular Auto; (#3) MediCoop; (#4) Eurobank; (#5) Westernbank; (#6) Bank of America; (#9) Miami Dade County Tax Collector; (#10) COS Insurance; (#11) PRT; (#14) Banco Santander; (#15) Citibank; (#18) Dorado Beach HOA; (#21) Liberty Cable; (#22) Sun Com and Banco Popular. The court also finds that the following creditors are ineligible to be counted towards the numerosity requirement pursuant 11 U.S.C. §303(b)(1) & (2); (#7) AEE; (#8) AAA; (#17) Cingular; (#12) Brickell Bay HOA; (#13) Iguina O'harriz law Firm; (#19) Mrs. Iris Eileen Tañon Correa; (#16) PR Treasury Department; and (#20) Galería del Parque.

Although the parties have had ample time to conduct discovery, the court orders Banco Popular and Popular Auto to conclude discovery in thirty (30) days.

An evidentiary hearing is scheduled for August 13, 2012 at 9:30am to consider:

1- Whether there are special circumstances compelling the court to obviate the three

77

creditor statutory requirement in Section 303(b).

2- Whether the involuntary debtor was not paying his debts as they became due as required by Section 303(h).

Ten (10) days prior to the evidentiary hearing the petitioning creditors and the Involuntary Debtor shall file proposed findings of facts. Each finding shall make reference to either a document, exhibit or to a witness.

Therefore, the Involuntary Debtor's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of May 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge