IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 06-04675 (ESL)
                                                INVOLUNTARY
EDGAR ABNER REYES COLON                          CHAPTER 11

        Debtor


                              OPINION AND ORDER


        The issue pending in this case is whether Banco Popular de Puerto Rico (hereinafter referred to as "Banco Popular" or "BPPR") and its affiliate Popular Auto, Inc. (hereinafter referred to as "Popular Auto") failed to comply with the requirements of 11 U.S.C. §303(b) because at the time the involuntary petition was filed (November 22, 2006) against Dr. Edgar Abner Reyes Colón (hereinafter referred to as "Involuntary Debtor" or "Dr. Reyes") Dr. Reyes had more than twelve (12) creditors. This court, in the opinion and order entered on May 23, 2012 (docket # 404) ('the "Opinion and Order"), In re Colon, 474 B.R. 330 (Bankr. D.P.R. 2012), found that as of petition date the Involuntary Debtor had 15 creditors and that there are only two petitioning creditors. However, the court also concluded that the judicially created "special circumstances exception" to the numerosity requirement in § 303(b) may apply if the petitioning creditors establish fraud, artifice or scam "based upon the alleged fraudulent transfers made by the Involuntary Debtor to various corporations prior to the filing of the bankruptcy petition." Thereafter, "if the petitioning creditors prove that special circumstances are indeed present in this case, then the court would have to determine whether the Involuntary Debtor was 'generally not paying such debtor's debts as such debts become due' pursuant to 11 U.S.C. §303(h)(1) in order to grant the order of relief in this case." See order entered on August 10, 2015 (dkt. # 488).

-1-

This case is also before the court upon the Involuntary Debtor's renewed motion to dismiss the involuntary petition. The Involuntary Debtor reasserts its contention that the involuntary petition must be dismissed because the same fails to comply with the statutory provisions in 11 U. S. C. § 303(b)(1) and (2), requiring that whenever there are more than 12 creditors, at least three undisputed creditors must join the petition. The Involuntary Debtor also reaffirms its legal conclusion that after the Supreme Court's opinion in Law v. Siegel, 134 S. Ct. 1188 (2014), the "special circumstances exception" addressed in this court's order of May 12, 2012 is not applicable, and that it has so been determined by recent decisions.

The travel and facts of this case are found in the opinion of May 12, 2012. In re Reyes Colon, 474 B.R. 330 (Bkrtcy. D.P.R. 2012) (Lamoutte, BJ). See also the orders entered on August 10, 2015 (dkt. #488) and October 28, 2015 (dkt. #540). The issue pending after these decisions was whether there were facts warranting that the "special circumstances exception" to the creditor numerosity requirement, as determined in In re Moss, 249 B.R. 411 (Bankr. N.D. Tex. 2000), be applied in this case. After a thorough analysis of all the evidence presented to this court and the applicable law, the court concludes that there are special circumstances due to the Involuntary Debtor's scheme to misrepresent his financial condition, but that such misconduct may not override the statutory requirement that three or more creditors join in the filing of an involuntary petition when there are 12 or more creditors. In reaching this conclusion, the court acknowledges that after Law v. Siegel, its equitable powers have been significantly diminished.

The court held evidentiary hearings in November and December 2015 to consider whether there are special circumstances warranting the exception to the three or more creditor requirement in section 303(b). The minutes of said hearings include a detail of both the documentary evidence and the testimony of the witnesses presented. See docket numbers 633, 704, 706, 709, 716 and 720. The court incorporates said minutes and attaches the same hereto as constituting its findings of fact. The inferences from the testimony of the witnesses presented

by the petitioning creditors, that is,  professionals who have worked with or for the Involuntary Debtor, show that these professionals (accountants[Mr. Félix Román Dávila], certified public accountants [CPA Félix N. Negrón Román], attorneys [Eric Y. Reyes Colón, Esq.], notary publics [María Torres Cartagena, Esq.], friends and associates [Dr. Francisco J. Quintero Peña]) related to Dr. Reyes exhibited convenient or selective amnesia to blur the economic scenario of Dr. Edgar A. Reyes and to orchestrate a scheme to deceive creditors by misrepresenting transactions to transfer assets, as well as the financial condition of the Involuntary Debtor and related entities, which misrepresentations ultimately were aimed at benefiting the Involuntary Debtor.  These individuals voluntarily agreed to misinform creditors.  The uncontroverted testimony and the reports (Exhibit 41 and Exhibit 42) of the expert witness, CPA Eduardo Soria, CPA/ABV, CVA, CIA, CFE, Esq., pellucidly established the involuntary debtor's fraudulent actions and scheme.  The witnesses' testimony, as incorporated and analyzed by CPA Eduardo Soria, evince a puppet scheme approach on the part of Dr. Edgar A. Reyes to defraud Banco Popular.  Therefore, the court finds that the scheme to defraud constitutes special circumstances.

However, only two creditors joined the petition, and the Involuntary Debtor had more than twelve creditors.  Therefore, the court is compelled to balance the statutory requirements for filing an involuntary petition and the application of equity principles in the administration of bankruptcy proceedings.

The view that bankruptcy courts are courts of equity was summarized in The Official Committee of Unsecured Creditors of Cybergenics Corporation v. Chinery, 330 F. 3d 548, 567 (3d Cir. 2003), as follows:

> The Supreme Court has long recognized that **bankruptcy courts** are **equitable** tribunals that apply **equitable** principles in the administration of bankruptcy proceedings. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) ("[C]ourts of bankruptcy are essentially **courts** of **equity**, and their proceedings inherently proceedings in **equity**."). The enactment of the Code in 1978 increased the degree of regulation Congress imposed upon bankruptcy proceedings, but it did not alter **bankruptcy courts**' fundamental nature. *See* H.R. Rep. No. 95–595, at

359 (1977), *reprinted in* U.S.C.C.A.N. 5963, 6315 (stating that, under the Bankruptcy Code, "[t]he **bankruptcy court** will remain a **court** of **equity**") (citing *Local Loan Co.,* 292 U.S. at 240, 54 S.Ct. 695). Any lingering doubt on that point is dispelled by a string of post-enactment Supreme Court decisions—*see Young v. United States,* 535 U.S. 43, 50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) ("[**B]ankruptcy courts** [ ] are **courts** of **equity** and 'apply the principles and rules of **equity** jurisprudence.' ") (quoting *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939)); *United States v. Energy Resources Co.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) ("[**B]ankruptcy courts**, as **courts** of **equity**, have broad authority to modify creditor–debtor relationships.")—and by the Code itself. *See* 11 U.S.C. § 105(a) ("The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

Equity in bankruptcy has been generally related to the "fresh start" principles. Grogan v. Garner, 498 U. S. 279 (1991). Section 105(a) of the Bankruptcy Code, which allows bankruptcy judges to issue orders that are necessary or appropriate to carry out the provisions of the Code, has been used as the basis to claim equitable powers in bankruptcy. Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007). This was the rule in the First Circuit after Marrama. See Malley v. Agin, 693 F. 3d 28 (1st Cir. 2012). The rule has been admittedly limited to exercising equitable powers to facilitate other code provisions and not a roving commission to do equity. In re Ludlow Hospital Society, Inc., 124 F. 3d 22 (1st Cir. 1997). See also In re Nosek, 544 F. 3d 34 (1st Cir. 2008). However, the legal scenario changed in 2014. Change in bankruptcy is not a strange concept. As stated by the Supreme Court in Wright v. Union Central Life Ins. Co., 304 U.S. 502, 513 (1938): "[t]he subject of bankruptcies is incapable of final definition. The concept changes."

After Law v. Siegel, the equitable powers of the bankruptcy courts, to the extent they existed, have been diminished or restricted whenever exercising such equitable powers contravenes specific statutory provisions. Law v. Siegel, making reference to the Supreme Court's decision in Marrama, specifically did not endorse "the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code." This change was acknowledged by the First Circuit in U. S. V. Ledee, 772 F. 3d 21, 29 n. 10 (1st Cir.

2014).  The First Circuit noted that "the Supreme Court's ruling does not restrict the bankruptcy court's discretion concerning amendments unrelated to exemptions …"  This view was the one adopted by the court at the hearing held on November 12, 2015 when the following was stated:

> The court advanced to the parties, that this court's appreciation of the facts in 2012 in order to determine whether the special circumstances apply may be different in 2015. In the year 2012, the prevalent decision by the Supreme Court was In re Marrama, 449 U.S. 365 (2007). The court stated that it is fully conscious that in the year 2014, the Supreme Court entered another decision, Law v. Siegel. Thus, in order to make a final determination based upon the facts as to whether special circumstances should be applied in this scenario (involuntary petition) which is different from the exemption scenario in Law v. Siegel and is different from the factual scenario in Marrama which was a motion to convert. The court stated that it has to make a decision based on the facts and it is conscious of the law and will apply the same as best as it can. However, the parties have the duty and responsibility to place the court in a position to be able to render a legal decision based upon the facts. The court cannot avoid making the decision because the parties are reticent to present the evidence to the court. This court will make a ruling based upon the evidence presented. The reasons for this hearing should have been clear since the court's May 22, 2012 decision which has been postponed basically because of the discovery issues that have been brought before the court. The court further stated that it was aware of the mandamus that was filed not for an action, but for the First Circuit to make a decision on the legal issue that is ultimately before the court. That is the First Circuit Court's province which I will not even attempt to delve into. The court stated that it may decline to grant the involuntary petition for relief, but that does not divest the court of jurisdiction to impose sanctions for violations of discovery orders and whether or not the ultimate sanction of granting the relief requested that is the entry of the order for relief is a legal determination that will be considered.

See minutes at docket #633, page 8.

Supreme Court precedent lends support to this court's perspective at such juncture.  In Taylor v. Freeland & Kronz, 503 U.S. 638, 646 (1992) the Supreme Court found that there were no "unusual circumstances" warranting addressing equity arguments under section 105(a).  Thus, implicitly, misconduct may be a factor to consider.

The First Circuit Court of Appeals recently addressed the subject of claims of equitable relief in the bankruptcy courts in In re Oak Knoll Associates, L.P, ___ F.3d ___, 2016 US App. Lexis 15276, 2016 WL 4410065, (1st Cir. August 19, 2016), and held that:

> Congress has given bankruptcy courts the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). We have cautioned, however, that this does not give bankruptcy courts "a roving writ, much less a free hand" to provide equitable relief. In re Jamo, 283 F.3d 392, 403 (1st Cir. 2002). Rather, this statute "may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code." Id.

The filing of a voluntary petition in bankruptcy has few limitations.  On the other hand, an involuntary petition initiated by creditors is more limited as it must meet the requirements in § 303.  Involuntary relief is only available in cases under chapter 7 or chapter 11. The entry of an order for relief is not automatic in an involuntary case as the petitioning creditors must establish the statutory grounds supporting relief. Charles Jordan Tabb, Law of Bankruptcy. Third Edition (2013), pgs. 120-121.

Creditors generally commence involuntary cases to protect themselves against dissipation or diminution of assets, particularly if the creditor is concerned that the debtor may be transferring assets outside their reach.  David Wheeler, Involuntary Bankruptcy Petitions: Is § 303 Still a Viable Creditor Alternative? 29-9 ABIJ 36 (November 2010).  The evidence before this court clearly shows that the reasons leading to the filing of the involuntary petition are the typical ones prompting creditors to take action.  The Involuntary Debtor was transferring assets to related entities under his possession and control, and was engaged in a scheme to defraud his main creditor, Banco Popular de Puerto Rico.

An involuntary petition must be executed by the parties specified in § 303 (b).  Hon. Joan N. Feeney, Hon. Michael G. Williamson, Michael J. Stepan, Esq., Bankruptcy Law Manual, Fifth Edition, Volume 2, § 14.8.  The number of petitioning creditors depends on the number of creditors holding qualified claims.   Hon. Joan N. Feeney, Hon. Michael G. Williamson, Michael J. Stepan, Esq., Bankruptcy Law Manual, Fifth Edition, Volume 2, § 14.9.

This court has determined that there are more than twelve creditors. Therefore, at least three petitioning creditors must join the petition. 11 U. S. C. § 303(b)(1).

The bankruptcy court in In re Mateer, 525 B.R. 559, 567 (Bkrtcy. D. Mass. 2015), was faced with a similar predicament, determining whether the statute or equity should prevail. I share in the frustration inferred from the statements by Chief Judge Hoffman in Mateer, concluding that misconduct cannot override a statutory provision in the Bankruptcy Code. In this case there is a specific statutory requirement for the filing of an involuntary petition against a debtor who has more than twelve creditors. The involuntary petition must be filed by three or more creditors. A fraudulent scheme, after Law v. Siegel, is not a basis for a bankruptcy court to obviate the statutory requirement that there be three or more creditors joining the involuntary petition when there are twelve or more creditors. As stated by Professor Klee: "After Law, bankruptcy courts may be less likely to test the limits of their equitable powers. If they do, appellate courts should be less likely to tolerate a use of the equity powers that conflicts with the Bankruptcy Code." Professor Kenneth N. Klee on the Supreme Court's holding in Law v. Siegel, 571 U.S. ___ , 2014 U.S. Lexis 1784 (March 4, 2014), 2014 Emerging Issues 7162.

Thus, the Marrama holding that bankruptcy judges may take appropriate actions to avoid abuse of process under section 105(a) has been severely restricted by Law v. Siegel, as bankruptcy judges do not have equitable powers not found in the Bankruptcy Code, when the invocation of the equitable powers is based on bad faith or misconduct. Such is the law, and this court is obligated to follow the same. The notion that bankruptcy courts are courts of equity may now be more an illusory construct than a judicial precept. Perhaps rightly so, as "[t]he intended function of the federal courts is to apply the law as it comes to them from the hands of others." Robert H. Bork, The Tempting of America, The Political Seduction of the Law, pg. 4 (1990).

In view of the foregoing, the involuntary petition is hereby dismissed.

SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of September, 2016.

-7-

Enrique S. Lamoutte
United States Bankruptcy Judge

-8-